Amadon, Appellant, *v.* Amadon et ux.

Argued April 16, 1948. Before Maxey, C. J., Linn, Stern, Patterson, Stearne and Jones, JJ.

*Herbert A. Barton,* with him *Isaac J. Vanartsdalen* and *Swartz, Campbell & Henry,* for appellant.

*George P. Williams, Jr.,* with him *Webster S. Achey* and *Orr, Williams, Baxter & Dubois,* for appellees.

Opinion by Mr. Justice Linn, May 24, 1948.

This is a proceeding in equity, by a creditor, to set aside a transaction alleged to be within the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, 39 PS 351. The plaintiff is the divorced wife of Roger S. Amadon; the defendants are Amadon and his present wife. The plaintiff and Amadon were married March, 1916, when he was 26 years of age and she was 27. They lived together until September, 1937; she obtained a divorce in Delaware County March 4, 1938. While the divorce suit was pending the plaintiff and Amadon, on November 12, 1937, signed an agreement by which he agreed to pay to her "for and during the term of her

natural life (as long as . . . [she] . . . remains unmarried) the sum of One Hundred ($100.00) Dollars, per month, the first payment to be made on the first day of September, 1937, and on the first day of each month thereafter during the term thereinabove provided." She also received $1,000 in cash, certain household furniture, and an assignment of a $5,000 life insurance policy on his life. Amadon performed the agreement until March 1, 1943. He paid $75.00 April 1, 1943, and then became delinquent. This bill was filed December 27, 1944.

When the divorce decree was granted in March, 1938, he was, and for some time had been, a professor in the School of Veterinary Medicine in the University of Pennsylvania, at a salary of $5,000 a year. He also earned some money by lectures. His present wife, the co-defendant, was then a student in the Department in which he was a teacher. They were married in September, 1938, and thereafter lived at Doylestown, Bucks County. The co-defendant was graduated from the Veterinary Department of the University in 1941. Amadon resigned his professorship in July, 1944.

On March 1, 1944, plaintiff sued Amadon in Philadelphia to recover monthly payments in default, and obtained judgment, but was unable to find assets to satisfy it. She then filed the bill now before us. Defendants filed a responsive answer. After hearing the bill was dismissed. From that decree the plaintiff appeals.

From the evidence the learned chancellor made a number of findings of fact, some of which we shall quote:

"11. On May 12, 1941, the Defendant, Mary Amadon, purchased a property in the Borough of Doylestown, Bucks County, to be used by her as a veterinary hospital in the practice of her profession.

"12. The purchase price for the property at that time was $3,000, of which the Defendant, Mary Amadon, paid at least $2,000 out of her personal funds. The Defendant, Roger Amadon, paid a portion of the consideration at the time and thereafter advanced various sums of money

to Mary Amadon for further improvements and enlargements of the property so that the total cost of the property finally reached approximately $7,000."

"14. Of this total cost of the property during the period of several years the Defendant, Roger Amadon, contributed at least one half."

"21. Roger Amadon's intentions and motives were mixed. The said payments and transfers by Roger Amadon to his wife, Mary Amadon, were made with intent to defraud the Plaintiff and at the same time from natural motives of affection and interest in his second wife, Mary Amadon, and for the purpose of contributing to the success of her professional venture and undertakings in establishing a veterinary hospital in her own name."

"24. She, the said Mary Amadon, never received any funds, contributions or property from her husband, Roger Amadon, with the intent to conceal the same and to place the same beyond the reach of the Plaintiff, or any other of her husband's creditors, nor with intent to aid her husband in so doing.

"25. The Defendant, Mary Amadon, at the time of receiving said funds, property and contributions had no knowledge of any intent on the part of her husband, Roger Amadon, to defraud the Plaintiff."

While the 11th finding is that Mary Amadon purchased the property in Doylestown, the fact is that it was conveyed to both the defendants as tenants by entireties for money supplied by both. In the course of his discussion the learned chancellor said: "We have found as a fact that the Defendant, Roger S. Amadon, transferred his property, consisting of money, and invested a large part of it in a veterinary hospital in the joint names of his wife, Mary K. Amadon, and himself as tenants by the entireties, with the fraudulent intent to place it beyond the reach or future reach of the Plaintiff, his former wife. We have reached this conclusion from the peculiar and unexplained circumstances that he

voluntarily relinquished a lucrative position as instructor in the University of Pennsylvania, together with the fact that by the separation agreement he had practically assigned his salary from that employment to the Plaintiff as security for the performance of his agreement. For some unknown reason he failed to show whether he has since been gainfully employed, and if so, where and under what conditions. Since he gave no reason or necessity for his resignation, we cannot avoid the conclusion that he resigned his position to escape the effect of that assignment. The second reason leading to the conclusion of fraud is based upon his numerous, indiscreet letters to the Plaintiff defying her and boasting of his ability to defeat her in future conflicts."

Two fundamental errors in the proceeding stand out in the conclusions of law in which the learned chancellor states: "(a) The evidence fails to show that the Defendants fraudulently transferred the property and assets of Roger S. Amadon into the joint names of both Defendants as tenants by the entireties for the purpose of concealing the same or placing it beyond the reach of the Plaintiff as a creditor of the said Roger S. Amadon.

"(b) It is not fraudulent for a husband who is solvent and not presently indebted to any one to contribute of his assets to the purchase of real estate in the name of his wife and himself as tenants by the entireties." Both these conclusions are wrong as applied to the facts. Having found in the 21st finding that Amadon conveyed his assets "with intent to defraud the Plaintiff" the learned judge could not legally conclude there had been no fraudulent transfer violating the rights of the plaintiff. The fact that the transfer was made, as the learned judge concludes, "into the joint names of both defendants" does not render innocuous Amadon's fraudulent conduct; his fraud is neither excused nor protected by his resort to tenure by entireties, even though his cotenant was unadvised of his fraud. The second error is in the conclusion that Amadon was not presently in-

debted, within the meaning of the Uniform Fraudulent Conveyancing Act, when he made the transfers. The Act defines "conveyance" as including the payment of money; "creditor" is defined as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent"; "debt" is defined as "any legal liability, whether matured, or unmatured, liquidated or unliquidated, absolute, fixed, or contingent." Section 7 * of the Act provided: "Conveyance Made with Intent to Defraud.—Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." Plaintiff was a creditor; the monthly payment obligation created by the agreement of 1937 was a "legal liability" within the meaning of the term "debt": compare *Q. F. B. & L. v. Burstein,* 310 Pa. 219, 165 A. 13; *Schline v. Kine,* 301 Pa. 586, 152 A. 845.

We have, then, the fact that Amadon, intending to defraud the plaintiff, conveyed all his assets in part payment for certain property in Doylestown to be held by entireties. When property is held by entireties creditors of either spouse cannot acquire an enforceable lien by obtaining judgment or title by sale on execution: *Gasner v. Pierce,* 286 Pa. 529, 532, 134 A. 494; *Iscovitz v. Filderman,* 334 Pa. 585, 589, 6 A. 2d 270; *Use of Bank v. Penrod,* 354 Pa. 170, 47 A. 2d 249; *Maxwell v. Saylor,* 359 Pa. 94, at page 99. That rule applies to honest transactions but will not aid Amadon to defraud the plaintiff. The existence of his obligation disqualified him from fraudulently paying his money for an estate by the entireties if challenged by the plaintiff creditor. We must accept the findings that the co-defendant is innocent of the fraud and

---

* See *Iscovitz v. Filderman,* 334 Pa. 585, 6 A. 2d 270; *Simon v. Sorrentino,* 145 Pa. Superior Ct. 364, 20 A. 2d 805; *Ferguson v. Jack,* 339 Pa. 166, 14 A. 2d 74.

also that she made substantial contributions to the cost and improvements of the hospital.

Sections 9 and 10 of the Act provide: "Section 9, Rights of Creditors Whose Claims Have Matured.— (1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser: (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or (b) Disregard the conveyance, and attach or levy execution upon the property conveyed. (2) A purchaser who, without actual fraudulent intent, has given less than a fair consideration for the conveyance or obligation may retain the property or obligation as security for repayment. (3) . . ."

"Section 10. Rights of Creditors Whose Claims Have Not Matured.—Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured, he may proceed, in a court of competent jurisdiction, against any person against whom he could have proceeded had his claim matured, and the court may: (a) Restrain the defendant from disposing of his property; (b) Appoint a receiver to take charge of the property; (c) Set aside the conveyance or annul the obligation; or (d) Make any order which the circumstances of the case may require."

The burden of proof was on the plaintiff. It is not necessary to show that there are other creditors: *Q. F. B. & L. v. Burstein*, 310 Pa. 219, 165 A. 13. The 12th finding states the total cost of the Veterinary hospital to have been $7,000; the 14th finding states that Amadon contributed at least one-half, or $3,500. As Amadon contributed that sum with the intention of defrauding the plaintiff and as more than that sum appears now to be due under the contract, the plaintiff is entitled to a decree requiring payment of that sum on account and,

in default of payment, is entitled to execution against the hospital.

It follows from the findings of fact that if Amadon paid $3,500, the co-defendant paid the balance of the $7,000. As she has been found innocent of intentional participation in the fraud, she is entitled to be protected in the execution to the extent of her investment in the hospital as found by the chancellor: *Peoples Savings & Dime Bank v. Scott*, 303 Pa. 294, 298, 154 A. 489. In other words, she is entitled to one-half the proceeds, but not less than thirty-five hundred dollars, received on the execution sale, if such a sale becomes necessary.

Defendants' argument that the plaintiff is not in court with clean hands does not merit discussion.

The decree is reversed, and the record is remitted with instructions to enter a decree in conformity with this opinion; costs to be paid by Roger S. Amadon.