**Brigerman Estate**

*Sheldon Tabb,* for accountant.

*David M. Hass* and *Morris L. Rush,* for creditor.

KLEIN, Adm. J., May 1, 1970.—John Hubert Brigerman, also known as John H. Brigerman, died August 2, 1968, intestate, survived by Gregory Watts Brigerman, son, and Zuletta Holden, daughter, as the parties entitled to his estate under the intestate law, according to the statement of proposed distribution. Letters of administration were granted August 21, 1968, and proof of advertisement of the grant thereof was produced to the auditing judge.

All parties in interest are stated to have received notice of this audit.

Payment of Pennsylvania inheritance tax of $218.82 on August 15, 1969, was duly vouched.

At the audit on October 6, 1969, Messrs. Rush and Hass entered an appearance on behalf of Georgia Gales, a creditor, whose claim was stated to be represented by a judgment dated April 28, 1955, obtained in an equity action in the Court of Common Pleas No. 2, December term, 1953, no. 2499. The judgment was stated to be in the sum of $4,000, plus interest from October 11, 1950, as per the decree of the court of common pleas, in the sum of $4,556.69, making a total claim of $8,556.69. The audit was continued to permit counsel for the accountant to investigate the nature of the claim. At the continued audit on November 20,

1969, a certified copy of the docket entries of the court of common pleas with respect to the said claim was submitted by counsel for the claimant. The matter was further continued at the request of counsel for the accountant.

A study of the record discloses that Georgia Gales, the claimant, was the owner of premises 615 North Thirty-fourth Street, in Philadelphia, on August 16, 1950. John H. Brigerman, decedent, was an attorney authorized to practice law in Indiana, and was also a real estate broker licensed in Pennsylvania to engage in the business of buying, selling and managing real estate as agent for others. In June 1950, the claimant entered into a written agreement with decedent, appointing him as her agent to sell the real estate. Decedent was married at the time to Geraldine Brigerman Jones, the administratrix. Using his wife as a straw party, while fraudulently leading Mrs. Gales to believe she was a bona fide purchaser, decedent purchased the premises in his wife's maiden name, Geraldine Erskine, for $8,500 and sold it to a customer he had obtained for $12,500, thus cheating Mrs. Gales of $4,000. Upon discovering the fraud perpetrated upon her, Mrs. Gales filed a complaint in equity against decedent on December 31, 1953. On October 18, 1954, an adjudication was filed by Lewis, P. J., awarding $4,000 to the claimant with interest at six percent from October 11, 1950.

On January 4, 1954, which was after the equity suit was commenced, decedent purchased premises 5310 West Girard Avenue, Philadelphia, Pa., taking title in his name as trustee. The deed recited that the trust was "for the use and benefit of the said John H. Brigerman and Geraldine Erskine Brigerman, his wife, for and during the respective terms of their natural lives and the life of the survivor of them. And, upon the death of the survivor of them . . . the said trust is to

terminate and title to the said premises is to vest in Gregory Watts Brigerman, and Zuletta Erskine Brigerman, in equal shares absolutely and in fee." The deed provided further that the trustee "may sell or mortgage the said premises in his discretion, giving and granting to the purchaser or mortgagee a good and sufficient deed or mortgage and bond and warrant of attorney, for the same, without any liability on the part of such purchaser or mortgagee to see to the application of the purchase or mortgage money." Decedent sold the premises on February 23, 1955.

On October 6, 1967, decedent opened savings account No. AX 76,874 in the Philadelphia Saving Fund Society in his individual name and deposited $2,526.56 therein. At the continued audit on March 24, 1970, the administratrix, who is the divorced wife of decedent, claimed that the fund on deposit in that savings account, inventoried for $2,616.70, was not the property of decedent but formed part of the corpus of a trust created by him on January 4, 1954, designating her and their two children as beneficiaries.

The administratrix contends that decedent retained the proceeds of the sale in his possession from 1955 until October 6, 1967, when he opened account No. AX 76,874. Although the deed reveals that the consideration for the sale of the said real estate was $9,000, accountant insists that the sum of $2,526.56 deposited by decedent in his name in the account in the Philadelphia Saving Fund Society represents the cash proceeds of the sale which was to be held in trust for decedent's children and that the said bank account is not an asset of the present estate. Counsel for Georgia Gales dispute this claim and maintain that the proceeds of the savings account form part of decedent's estate and are liable for his debts.

It is obvious that accountant's explanation of the source of the funds in account No. AX 76,874 is an at-

tempt to offset the claim of Georgia Gales which arose out of a fraudulent transaction in which the accountant participated. In the opinion of the auditing judge the evidence is totally inadequate to establish that the account in the Philadelphia Savings Fund Society represents trust funds. Further, assuming arguendo that there is some merit to accountant's position, the creditor must prevail by virtue of the provisions of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045. Section 4 of that act, 39 PS §354, provides:

"Every conveyance made . . . by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made . . . without a fair consideration."

In First National Bank of Marietta v. Hoffines, 429 Pa. 109 (1968), Mr. Justice Jones reviewed in considerable detail the basic principles of law relating to fraudulent conveyances and listed the many decisions on the subject in this jurisdiction. We repeat only those rules which we regard as pertinent to the issues in this case: (pp. 114, 115)

"(1)  if the person conveying the property was in debt at the time he made the conveyance, then the burden rests upon the grantee or grantees to establish, by clear and convincing evidence, *either* that the person conveying was then solvent and was not by such conveyance rendered insolvent or that a fair consideration had been paid for the conveyance: Peoples Savings & Dime Bank v. Scott, 303 Pa. 294, 297, 154 A. 489 (1931); Iscovitz v. Filderman, 334 Pa. 585, 589, 6 A. 2d 270 (1939); Miami National Bank v. Willens, 410 Pa. 505, 507, 190 A. 2d 438 (1963). Cf. Smith v. Arrell, 388 Pa. 117, 118, 119, 130 A. 2d 167 (1957): . . .

"(3) the question of insolvency is to be determined as of the date of the conveyance: Angier v. Worrell,

346 Pa. 450, 452, 453, 31 A. 2d 87 (1943) and authorities therein cited;

"(4) where reliance is placed upon §4 of the statute 'the question of actual intent to defraud drops out of the case: [citing authority]': Angier v. Worrell, supra, 452, 453; . . .

"(7) where a husband conveys realty to his wife and himself as tenants by the entireties for a nominal or inadequate consideration, at a time when the husband is insolvent or thereby rendered insolvent, the conveyance is presumptively fraudulent as to the husband's creditors: Butterworth v. Wells, 303 Pa. 302, 305, 154 A. 491 (1931); Queen-Favorite B. & L. Ass'n. v. Burstein, 310 Pa. 219, 222, 223, 165 A. 13 (1933); Raub Supply Co. v. Brandt, 323 Pa. 119, 120, 124, 186 A. 751 (1936); Farmers Trust Co. of Lancaster v. Bevis, supra, 89, 91; Larrimer v. Feeney, 411 Pa. 604, 607, 192 A. 2d 351 (1963); Simon v. Sorrentino, 145 Pa. Superior Ct. 364, 20 A. 2d 805 (1941); Cole-Knox Mortgage Co. v. McGaffin, 182 Pa. Superior Ct. 610, 616, 127 A. 2d 769 (1956);

"(8) under the Fraudulent Conveyance Act, a *contingent* liability for a debt of the person making a conveyance equates a fixed liability insofar as fixing the status of a creditor is concerned: Queen-Favorite B. and L. Ass'n. v. Burstein, supra, 224; Amadon v. Amadon, 359 Pa. 434, 438, 439, 59 A. 2d 135 (1948); Farmers Trust Co. of Lancaster v. Bevis, supra, 91 (endorser); . . ."

In the present case, the so-called trust in favor of his wife and children, alleged to have been created by the purchase of premises 5310 West Girard Avenue, was made without consideration, as it is conceded that only decedent's money was used to purchase the property. It is crystal clear and the auditing judge finds as a fact that decedent, who was a real estate broker engaged in buying and selling real

estate, used the trust device in an attempt to fraudulently place his real estate transactions beyond the reach of his creditors and particularly to frustrate the claimant in her efforts to recover the money which he owed her. Moreover, as we have said, there is not the slightest bit of credible evidence which could possibly lead to the conclusion that the deposit of $2,526.56, made by decedent in his own name in 1967, represents any trust funds in which his divorced wife or their children have any interest, legal or equitable. Accordingly, we hold that the Philadelphia Saving Fund Society account is part of decedent's estate and is liable for his debts.

In the statement of proposed distribution, accountant lists a claim of Reuben Suny in the amount of $240.64 which was not admitted. At the audit, however, Mr. Tabb informed the court that this claim was settled for $100, which amount has not yet been paid. Since the estate is insolvent, the creditors will share pro rata in the available assets . . .

And now, May 1, 1970, the account is confirmed nisi.