602 A.2d 380

**Roberta A. MELAT, Appellant,**

v.

**David H. MELAT, Karen S. Hoovler.**

Superior Court of Pennsylvania.

Argued July 31, 1991.

Decided Jan. 28, 1992.

648

650

Wayne J. Aaron, Erie, for appellant.

Michael J. Antkowiak, Oil City, for Melat, appellee.

David W. Swanson, Warren, for Hoovler, appellee.

Before McEWEN, OLSZEWSKI and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the order of the Court of Common Pleas of Venango County dated January 14, 1991, granting summary judgment in favor of appellees, David Melat (hereinafter referred to as "husband") and Karen Hoovler, his present spouse, and against appellant, husband's former wife, Roberta Melat (hereinafter referred to as "wife"). We reverse.

The facts of this case are eruditely set forth in the trial court's opinion as follows:

This action arises out of a long series of protracted litigation dating back to 1982, concerning divorce proceedings, alimony and support obligations, and property settlements. [Appellant], Roberta Melat, and [appellee], David Melat, were formerly husband and wife. During their marriage, they acquired certain real property which has been referred to by the parties as the "Redfield property." The premises were conveyed by the [wife] and [husband], David Melat, to the [husband], David Melat, by deed dated March 7, 1985, as part of various stipulations agreed to in the divorce action, A.D. No. 9— 1982. By deed dated July 26, 1985, and recorded on August 1, 1985, the [husband], David Melat, and his present wife, the [appellee] Karen [Hoovler], conveyed the parcel of land known as the Redfield property located

in Cherrytree Township, Venango County, to themselves as tenants by the entireties.

As part of the divorce agreement, the [husband], David Melat, executed a note evidencing indebtedness to the [wife] in the amount of $150,000.00, payable in three installments of $50,000.00 each, commencing on or before the first day of the first calendar month following the calendar month in which an absolute decree in divorce was granted, with the second and third installments being due 90 and 180 days thereafter. A final decree in divorce was granted on April 26, 1985 at A.D. No. 9—1982. The [husband], David Melat, failed to make payments on the note as provided in the divorce agreement and the [wife] thereafter confessed judgment on the note in separate proceedings entered in this court at C.D. No. 147—1987. Thereafter and following protracted litigation and negotiations, the [wife] and [husband], David Melat, entered into a stipulation approved by Order of Court, both being dated March 21, 1988, and entered at A.D. No. 9—1982 in this Court. The stipulation in pertinent part states that the [wife] shall withdraw all judgements secured against the [husband], David Melat, regarding the unpaid note, child support and alimony. The [wife] also agreed to discontinue a civil action filed at A.D. No. 268—1986, and that all obligations contained in the divorce agreement shall be deemed to commence on January 1, 1988, and each party waives any claim which he or she may have as a result of the nonperformance of any of the terms or conditions of the agreement occurring prior to January 1, 1988. The parties then agreed on a new payment structure on the note.

[Husband], David Melat, has once again failed to pay on the note and [wife] now seeks to set aside the execution and delivery of the deed to the Redfield property from the [husband], David Melat, to himself and his present wife, the [appellee], Karen [Hoovler], dated July 6, 1985. [Wife] contends the execution and delivery of the foregoing deed constituted a fraudulent conveyance against

her because it was made without consideration at a time when the [husband], David Melat, was indebted to the [wife] on a judgment note dated March 27, 1985, in the amount of $150,000.00 and under a marital settlement agreement dated March 27, 1985, whereby the [husband], David Melat, was indebted in the amount of $450,000.00 to the [wife].

Lower court opinion at 1–3. Appellees filed a motion for summary judgment on the grounds that the stipulation extinguished any claim wife might have under the Fraudulent Conveyance Act because the stipulation extinguished husband's initial liability. In granting summary judgment in favor of husband and Ms. Hoovler, the trial court reasoned that the stipulations entered into on March 21, 1988 served as a novation which extinguished the original property settlement agreement, as well as appellant's rights under that agreement. The trial court concluded that since wife conveyed the property in in 1985, three years before the parties agreed to the present stipulation, she was not a creditor under the Fraudulent Conveyance Act. 39 P.S. § 351 *et seq.* Appellant filed a motion for reconsideration which was denied and this timely appeal followed. Appellant presents us with one issue for our consideration: whether the 1988 stipulation constituted a novation which waived appellant's fraudulent conveyance claims.

As a preliminary matter, appellee Hoovler contends that appellant's claims are barred under the doctrine of *res judicata.* Specifically, she maintains that appellant sought to have the conveyance presently at issue voided in previous divorce proceedings. However, our inspection of the record discloses that the trial judge never considered this claim as it relied solely on the contractual issues in granting summary judgment. Although the entire record of the previous proceedings is not before us, the present record is sufficient to dispose of appellant's claim. Ms. Hoovler has not clearly explained whether she is arguing *res judicata* (more commonly known as claim preclusion) or collateral estoppel

(more commonly known as issue preclusion). We will therefore dispose of both theories.

■■■■ Our supreme court has recently set forth tests to apply for both situations. Application of the doctrine of *res judicata* requires the concurrence of four elements: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality in the persons for or against whom the claim is made. *City of Pittsburgh v. Zoning Board of Adjustment*, 522 Pa. 44, 54, 559 A.2d 896, 901 (1989). Here, it is relatively clear that parts (1), (3) and (4) of the test have been met. The thing sued for in both actions is the Redfield property and the parties in both actions are husband, wife and Ms. Hoovler.

The cause of action being asserted here, however, is quite different from the cause of action raised during the equitable distribution proceedings. As Ms. Hoovler concedes, wife filed motions to set aside the conveyance on the grounds that the equitable distribution was, in fact, inequitable. *See* Amended Answer and New Matter filed by appellee Hoovler, paragraphs 33 and 34; Hoovler Motion for Summary Judgment, paragraph 8. This claim was brought pursuant to a motion for special relief, a procedure available under the Pa.Rules of Civil Procedure governing divorce actions. *See* Pa.R.Civ.P. Rule 1920.43, 42 Pa.C.S.A., and the Pennsylvania Divorce Code, 23 Pa.C.S.A. § 3101 *et seq.* Wife's present cause of action seeks to avoid the conveyance under the Fraudulent Conveyance Act, as Husband's conveyance to himself and Ms. Hoovler rendered him insolvent and unable to compensate wife under the settlement agreement as modified. These two causes of action are not identical. Therefore, the doctrine of claim preclusion does not apply to preclude wife's cause of action.

■■■■ Collateral estoppel seeks to preclude a litigant from raising an issue which has previously been determined and applies if (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there

was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *Id.*, 522 Pa. at 55, 559 A.2d at 901. Again, appellee Hoovler argues that wife's petitions for special relief concerned whether the distribution of property under the settlement agreement was equitable. Here, wife seeks to reclaim the Redfield property because husband has failed to remunerate wife for the conveyance. Thus, wife is not now attempting to relitigate the equitable distribution, but rather is trying to reclaim the property as a fraudulent conveyance. The issue presented here is not the same as the issue previously litigated. Therefore, wife's claim is not barred by the doctrine of collateral estoppel.

We now turn to the merits of this case. As an appellate court, we are bound to consider certain principles which dictate when and under what circumstances a trial court may properly enter summary judgment. *Goebert v. Ondek*, 384 Pa.Super. 100, 104, 557 A.2d 1064, 1066 (1989). The trial court must accept as true all well-pleaded facts in the non-moving party's pleadings, and give to him or her the benefit of all reasonable inferences to be drawn therefrom. *Jefferson v. State Farm Insurance Co.*, 380 Pa.Super. 167, 170, 551 A.2d 283, 284 (1988). Summary judgment should not be entered unless the case is clear and free from doubt. *Hathi v. Krewstown Park Apartments*, 385 Pa.Super. 613, 615, 561 A.2d 1261, 1262 (1989). A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file support the lower court's conclusion that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. Rule 1035, 42 Pa.C.S.A.; *Hatter v. Landsberg*, 386 Pa.Super. 438, 440–41, 563 A.2d 146, 147–48 (1989). *See Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 176, 553 A.2d 900, 903 (1989)

(entire record before lower court must be thoroughly examined and all doubts as to the existence of a genuine issue of material fact are to be resolved against a grant of summary judgment). We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank,* 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988). With our standard of review in mind, we turn to the circumstances of appellants' case.

In Pennsylvania, a settlement agreement between a husband and wife is governed by the law of contracts unless the agreement itself provides otherwise. *Jackson v. Culp,* 400 Pa.Super. 519, 522, 583 A.2d 1236, 1238 (1990). As the property settlement agreement in the instant case does not otherwise provide, we will dispose of this case under general contract principles. Wife argues that the stipulation agreed upon in March, 1988 served to modify the property settlement agreement to allow husband additional time to comply with the agreement. In contrast, husband and Ms. Hoovler argue that the new stipulation served as a novation which extinguished all prior rights in the original property settlement agreement. These diametrically opposed arguments call on us to analyze the differences between novations and modifications of contracts.

This court has previously held that a novation may only be found where the evidence demonstrates "the displacement and *extinction* of a valid contract, the substitution for it of a valid new contract, ..., a sufficient legal consideration for the new contract, and *the consent of the parties."* *Buttonwood Farms, Inc. v. Carson,* 329 Pa.Super. 312, 317, 478 A.2d 484, 486 (1984) (emphasis in original). The party asserting a novation of substituted contract has the burden of proving that the parties intended to discharge the earlier contract. *Id.* After reviewing the terms of the 1988 stipulation, we conclude that by its own terms a novation is not present here. The following excerpt from the stipulation evidence the lack of a novation:

1. *Except as modified* by this Stipulation, the Property Settlement Agreement of the parties dated March 27, 1985 (the Agreement), *shall remain in full force and effect and the same is hereby ratified and confirmed.*

Stipulation of March 21, 1988, paragraph 1 (emphasis added). The above-referenced language in the stipulation clearly indicates that the parties did not intend to substitute the stipulation for the original agreement. The language speaks of the agreement as modified, thereby indicating that no novation occurred.

A modification does not displace a prior valid contract; rather, the new contract acts as a substitute for the original contract, but only to the extent that it alters it. *Knight v. Gulf Refining Co.*, 311 Pa. 357, 360, 166 A. 880, 881 (1933). The original contract may be abrogated in part, with the residue remaining intact. *Egyptian Sand Real Estate, Inc. v. Polony*, 222 Pa.Super. 315, 321, 294 A.2d 799, 803 (1972). *See also* 8 Pennsylvania Law Encyclopedia § 294 (1971). As previously mentioned, the stipulation expressly states that the original agreement remains in full force and effect. Therefore, the parties here intended a modification of the agreement. Accordingly, we must now ascertain the effect of this modification on the rights and liabilities of the parties.

Wife contends that the modification merely served to extend husband's time for performance under the original agreement. We agree. The pertinent provisions in the stipulation concerning the parties rights and liabilities are set forth in the stipulation as follows:

3. The parties acknowledge that the Wife has secured a judgment against the Husband in the amount of $150,-000.00 and has also secured a judgment, or judgments which [sic] respect to unpaid child support and alimony. All of such judgments shall be withdrawn by the Wife. The Husband shall deliver to the Wife the original note in the amount of $150,000.00 to be held by her pending payment thereof.

4. The Wife shall settle and mark discontinued that certain Civil Action filed in the office of the Prothonotary of Venango County at A.D. No. 268, 1986.

5. Any obligation of the Wife to the Husband or the Husband to the Wife contained in the agreement shall be deemed to commence on January 1, 1988 and each party hereto waives any claim which he or she may have as a result of any nonperformance of any of the terms or conditions of the [sic] occurring prior to January 1, 1988.

\* \* \* \* \* \*

7. Default in payment of the obligation of the Husband ... hereof shall entitle the Wife to exercise the enforcement provisions of the said Note. Default in payment of the Husband's obligations under the Agreement shall give rise to the remedies set forth in the Agreement.

8. Waiver of past default as set forth hereinabove [sic] shall not impair the rights of the parties hereto to exercise any remedy available upon default occurring after January 1, 1988.

Stipulation, 3/21/88. The pertinent clauses in the stipulation demonstrate that husband's time to perform the obligations under the note was extended until January 1, 1988. Wife was required to discontinue all actions brought to enforce her rights under the original agreement, and to waive all claims from this breach of agreement. This does not mean, however, that husband had no liability to Wife before that time. As early as 1985, husband entered into a contractual agreement which called upon him to execute and pay on a note in exchange for Wife's conveyance of the Redfield property to him. It is well established that a modified agreement supplements the original contract. *Memphis, etc., Railroad Co. v. Wilcox*, 48 Pa. 161, 167 (1864). Under a modified agreement, liability of the parties is still established from the original agreement. *Id. See also* 8 Pennsylvania Law Encyclopedia, *supra*. Therefore, although Wife transferred the property to husband before

husband and wife agreed on the modifying stipulation, husband's contractual liability to execute and pay on the note was established from the original agreement. To find otherwise would reduce wife's actions to nothing more than an altruistic conveyance of property to husband. The absurdity of this result is evident. The true effect of the subsequent modification is that wife could not sue husband for breach of contract until January 1, 1988 or thereafter. Under the modified agreement, any claim before January 1, 1988, would have been premature. This does not mean that husband had no contractual obligation to execute a note to wife prior to that time, but rather, that he was not required to do so before January 1, 1988. Further, under the 1988 stipulation, wife retained all remedies previously available to her under the original agreement.

■■■ Since husband was liable to wife in 1985 under the original agreement, we must now ascertain the effect of this contractual liability on wife's claim under the Fraudulent Conveyance Act (Act). Wife brought two claims under the Act. Her first claim was under Section 4,[1] and the second claim was brought under section 7.[2] The Act further defines a "creditor" as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." 39 P.S. § 351. "Debt" is defined as "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute fixed or contingent." *Id.* In the instant case, by reason of her conveyance, wife had an unmatured claim against husband for

---

**1.** Section 4 of the Fraudulent Conveyance Act states:
Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent, is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration. 39 P.S. § 354.

**2.** Section 7 of the Fraudulent Conveyance Act states:
Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.
*Id.* § 357.

fraudulent conveyance. Husband had an unmatured debt which he owed to wife arising from the 1983 property settlement agreement. *See Baker v. Geist*, 457 Pa. 73, 321 A.2d 634 (1974) (appellant was a creditor where liability was based on conduct which occurred before the alleged fraudulent conveyances were made). In fact, wife had remedies under the Fraudulent Conveyance Act, even though her claim was premature. *See* 39 P.S. § 360 (rights of creditors whose claims have not matured).

Moreover, in *Amadon v. Amadon*, 359 Pa. 434, 59 A.2d 135 (1948), our supreme court held that a former spouse is a creditor of her ex-husband for purposes of the Act. In that case, a wife sued her former husband and his new wife to reclaim certain property in lieu of monthly alimony payments for which husband was in default pursuant to a property settlement agreement. *Id.*, 359 Pa. at 436, 59 A.2d at 136. After the suit was instituted, husband contributed one half of the sum for his new wife to purchase the property. *Id.*, 359 Pa. at 436–37, 59 A.2d at 136. The supreme court held that plaintiff-wife was a creditor for purposes of the Fraudulent Conveyance Act because the monthly payment husband owed to wife was a legal liability within the meaning of the term "debt." *Id.*, 359 Pa. at 439, 59 A.2d at 137.

Similarly, wife, in the case *sub judice*, was entitled to pursue her claims of fraudulent conveyance. She held the status of creditor from the moment she entered into the original property settlement agreement with husband. *Id.* Wife has done nothing but act in accordance with both the original property settlement agreement and the agreement as modified, while husband has done everything to elude his obligation to wife. Wife has sufficiently established her status as a creditor for purposes of both Sections 4 and 7 of the Fraudulent Conveyance Act. Based on the foregoing, we hold that the trial court committed a clear error of law in determining that a novation occurred.[3] We therefore

---

3. Wife also argues that the note which husband executed and defaulted upon was not part of the original settlement agreement and therefore her rights under the note could not be extinguished. In

reverse the order of the trial court granting summary judgment and remand for further proceedings.

Order vacated; the case is remanded for further proceedings consistent with this opinion; jurisdiction is relinquished.

---

light of our holding, we need not reach this argument. Despite the lack of reference to the note in the original agreement, the note was referred to in the 1988 stipulation and is therefore governed by that stipulation to the extent so provided.