**Therese MONEY, Appellant**

v.

**BOARD OF SUPERVISORS OF The TOWNSHIP OF WESTTOWN and Chester County Outdoor, LLC.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 2013.
Decided Feb. 20, 2014.
Publication Ordered April 11, 2014.

---

David A. Malman and Therese L. Money, West Chester, for appellant.

Patrick M. McKenna, West Chester, for appellee Board of Supervisors of the Township of Westtown.

Gregg I. Adelman, Blue Bell, for appellee Chester County Outdoor, LLC.

BEFORE: PELLEGRINI, President Judge, and COVEY, Judge, and COLINS, Senior Judge.

OPINION BY President Judge PELLEGRINI.[1]

Therese Money (Money) appeals the order of the Court of Common Pleas of Chester County (trial court) dismissing her petition for review of the Monument Sign Landscaping and Maintenance Agreement (Maintenance Agreement) approved by the Board of Supervisors (Board) of Westtown

---

1. This opinion was reassigned to the author- ing judge on January 27, 2014.

Township (Township). We reverse and remand.

In December 2010, Chester County Outdoor, LLC (CCO) challenged the validity of the Township's Zoning Ordinance alleging a *de jure* exclusion of off-premises advertising signs and billboards in the Township. In August 2011, the Township provided notice to Money of the Board's scheduled consideration of a proposed settlement agreement (Settlement Agreement) with CCO because of the proximity of Money's property to the site on which CCO proposed to erect a digital outdoor sign (Billboard) under the Settlement Agreement.

On receipt of the notice, Money retained counsel, David Malman (Malman), to evaluate and protect her property from the potential degradation of the use and enjoyment of her property and its economic value. On August 9, 2011, Malman contacted CCO's counsel, Gregg Adelman (Adelman), to discuss the proposed Billboard's impact on Money's property. Adelman provided Malman with a copy of the proposed Settlement Agreement and a Landscape Plan and Buffer Overview (Landscape Plan) illustrating the landscaping that would be installed to screen the Billboard and which indicated that the proposed evergreen buffer planted at a height of 25 feet would create a total visual buffer of her property. (*See* Reproduced Record (R.R.) at 22a–28a).

In reliance on the information provided by Adelman and the Township, Money did not object to the Board's approval of the Settlement Agreement. Paragraph 2 of the Settlement Agreement states, in pertinent part, that "CCO shall be permitted to construct an off-premises advertising monument sign on the Wilmington Pike Property substantially similar to the concept plan, landscaping plan and elevations attached as Exhibit 'A' ('Monument Plan'). . . . CCO shall install and maintain the proposed landscaping substantially similar to that which is depicted and listed on the Monument Plan. . . ." (R.R. at 33a, 42a). In addition, Paragraph 8.f. of the Settlement Agreement states that "[t]he Proposed Monument Sign shall not . . . [s]pill any light or glare onto neighboring properties or the roadway. . . ." (*Id.* at 35a–36a). Moreover, Paragraph 7 states:

> CCO shall maintain the Proposed Monument Sign in good working order and repair at all times. In addition, CCO shall maintain and upkeep all landscaping planted on the Wilmington Pike Property, including replacing deceased or dead landscaping. The maintenance responsibilities of CCO shall be set forth in a **separate Maintenance Agreement** which shall be incorporated by reference into this Agreement and made part hereof. (Emphasis added.)

(*Id.* at 35a). Finally, Paragraph 12(c) of the Settlement Agreement states that it "shall constitute the entire agreement among the Parties and supersedes all prior negotiations, understandings and agreements of any nature whatsoever with respect to the subject matter hereof." (*Id.* at 37a). Both the Board and the trial court approved the Settlement Agreement.

On February 6, 2012, the Board met to consider approval of the Maintenance Agreement between the Township and CCO as provided in the Settlement Agreement. Malman, counsel for Money, appeared at the meeting to object to the Board's approval of the Maintenance Agreement because the screening proposed by CCO did not comply with CCO's Landscape Plan or with the requirements of Paragraph 8 of the Settlement Agreement that the sign should not "spill any light or glare onto neighboring properties or the roadway." Nevertheless, the Board

approved the Maintenance Agreement and accompanying landscape plan.

CCO subsequently submitted a revised landscape plan making minor modifications to the landscape plan approved by the Board as part of its approval of the Maintenance Agreement. The revised plan was reviewed by the Township solicitor's landscape consultant who identified the following deficiencies in a February 17, 2012 e-mail to the solicitor:

> I reviewed the subject plan, Sheet LP-1, and compared it to the previous Landscape Plan dated 1–27–12. I also visited the site at 9 AM on 2–16–12 and at 10 PM on 2–16–12 to observe the Billboard during daylight and dark conditions.
>
> Again, the areal extent of the proposed plantings favorably match that of the previous Landscape Plan. However, since we were asked to do a site visit, to check the heights of the Billboard, and walls, and to view the Billboard from several vantage points, we offer the comments below.
>
> *   *   *
>
> 2. *Visibility from Properties to the West*
>
> 2.1 While standing at the base of the Billboard and viewing the Money residence, it appears that 3 more Arborvitae at 18 to 20 feet in height are needed, so that 6 such Arborvitae are (in a row) south of the sign.
>
> 2.2 However, it may be necessary to consider another alternative, to buffer views toward the Billboard, as I could not determine with 100% certainty if the

heights of 3 + 3 or 6 total Arborvitae at 18 to 20 feet tall on the south end of the Billboard would fully screen the view of the Billboard. (I double-checked the vantage points from the Billboard to the Money property, and from the Money property to the Billboard.)

(R.R. at 63a).

Malman appeared at the Board's February 21, 2012 meeting to object to the deficiencies in the revised landscape plan relative to CCO's Landscape Plan, its verbal representations, and the requirements of the Settlement Agreement. (R.R. at 166a). Nevertheless, the Board approved the revised landscape plan, amending the plan to include the addition of one Arborvitae to the south of the Billboard.

■ Money appealed the Board's approval of the Maintenance Agreement to the trial court to which CCO filed a petition to strike her appeal because she was not a party to the Settlement Agreement. The trial court granted CCO's petition and dismissed Money's appeal on the basis that the Board's approval of the Maintenance Agreement was not an appealable adjudication under the Local Agency Law (Law).[2] Money appealed to this Court.[3, 4]

Money argues that the trial court erred in determining that the Township's approval of the Maintenance Agreement was merely an implementation of the Settlement Agreement and not a separate appealable adjudication under the Law. We agree.

---

**2.** 2 Pa.C.S. §§ 551–555, 751–754.

**3.** In addition to its validity challenge, CCO also filed a civil action against the Township in the trial court. Money subsequently intervened in the civil action, and commenced a separate tort action against the Township, CCO and CCO's principal.

**4.** "Our review of a trial court's grant of a motion to dismiss is limited to determining whether the trial court abused its discretion or committed an error of law." *DeFilippo v. Cranberry Township Board of Supervisors,* 49 A.3d 939, 941 n. 1 (Pa.Cmwlth.2012).

■ "[T]he courts of this Commonwealth have recognized that settlement agreements are a permissible tool for resolving land disputes. The rationale is that the law favors settlements. The courts have jurisdiction over the municipality and landowner and therefore may approve settlement agreements." *Miravich v. Township of Exeter, Berks County,* 54 A.3d 106, 112 (Pa.Cmwlth.2012), *appeal denied,* —— Pa. ——, 75 A.3d 1283 (2013) (citations omitted). However, settlement agreements have always been problematic in zoning cases, especially those that allow waiver, not just of discretionary matters but from requirements in zoning ordinances or regulations, because those waivers are tantamount to *ad hoc* amendments of those provisions that do not comply with the mandatory procedures contained in the Municipalities Planning Code.[5]

■ It is undisputed that the instant Settlement Agreement, affecting personal or property rights, is an appealable "adjudication" under Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101. *Pennsylvania Association of Independent Insurance Agents v. Foster,* 150 Pa. Cmwlth. 572, 616 A.2d 100, 102 (1992) (citing *Department of Health v. Rehab Hospital Services,* 127 Pa.Cmwlth. 185, 561 A.2d 342 (1989), *appeal denied,* 525 Pa. 607, 575 A.2d 571 (1990)). In addition, 2 Pa.C.S. § 752 provides that "[a]ny person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals...."[6] Where a party is aware of a proposed settlement, that party is obligated to intervene and appeal the purported illegality of the settlement. If it does not, the settlement will be binding on the parties that were aware of the litigation. *T.H. Properties, L.P. v. Upper Salford Township Board of Supervisors,* 970 A.2d 495, 499–500 (Pa.Cmwlth. 2009).

■ The question in this case is whether Money could appeal the Board's approval of the Maintenance Agreement which modified the terms of the Settlement Agreement because it is a new and distinct adjudication. As this Court has explained, "[b]ecause a settlement agreement is considered a contract under Pennsylvania law, the document must 'speak for itself' and cannot be given a meaning other than that expressly stated within the agreement itself." *Oakmont Presbyterian Home v. Department of Public Welfare,* 159 Pa.Cmwlth. 562, 633 A.2d 1315, 1320 (1993).

The Settlement Agreement in this case contains an integration clause[7] which "expresses all of the parties' negotiations, conversations, and agreements made prior to its execution," *Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 498, 854 A.2d 425, 436 (2004). The changes then made by the Maintenance Agreement to the sub-

---

5. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

6. As this Court explained in *Larock v. Sugarloaf Township Zoning Hearing Board,* 740 A.2d 308, 312 (Pa.Cmwlth.1999):

When the property at issue is someone's home, the owner's right to protect the viability of his property is even more personal. The purchase of a home is often considered to be one of, if not the, most significant investments an individual can make during his lifetime. To deny an individual the right to protect his interest in the property he calls home would violate public policy.

7. As stated above, Paragraph 12(c) of the Settlement Agreement states, "This Agreement shall constitute the entire agreement among the Parties and supersedes all prior negotiations, understandings and agreements of any nature whatsoever with respect to the subject matter hereof." (R.R. at 37a).

stantive provisions of the Settlement Agreement cannot be integrated into that agreement by mere incorporation under Paragraph 7.[8] *See* Paragraph 12(d) of the Settlement Agreement ("This Agreement may be amended upon the written consent of the Parties to this Agreement, which shall not be unreasonably withheld....") (R.R. at 37a). The Maintenance Agreement changed the express and substantive terms of the Settlement Agreement by removing Paragraph 8.f.'s prohibition. As a result, the Maintenance Agreement constitutes a new "adjudication" modifying the Settlement Agreement which Money could properly appeal to the trial court. *See, e.g., Melat v. Melat,* 411 Pa.Super. 647, 602 A.2d 380, 385 (1992) ("A modification does not displace a prior valid contract; rather, the new contract acts as a substitute for the original contract, but only to the extent that it alters it. The original contract may be abrogated in part, with the residue remaining intact.") (citations omitted).[9]

Money abstained from opposing the initial Settlement Agreement because of what it said, not what the parties later amended and removed from it through the Maintenance Agreement. As outlined above, a mere "incorporation by reference" provision only incorporates what exists and to which there was a meeting of the minds at the time of execution; it does not mean that new terms that are a clear modification of express contract terms are incorporated into the agreement. As a neighboring landowner, Money may appeal this new "adjudication" because she appeared and objected at the Board's February 6, 2012 hearing approving the Maintenance Agreement and the Board's February 21, 2012 hearing revising the Maintenance Agreement. (R.R. at 161a, 166a).

Accordingly, because the Maintenance Agreement changed the substantive terms of the Settlement Agreement by now permitting light to spill onto Money's property, it constitutes a separate "adjudication" amending the Settlement Agreement that Money could appeal, the trial court's order is reversed and the case is remanded to that court to consider the merits of Money's appeal.

### ORDER

AND NOW, this *20th* day of *February,* 2014, the order of the Court of Common Pleas of Chester County dated January 24, 2013, at Civil Action No. 12–02445, is reversed and the case is remanded for consideration of the merits of Therese Money's petition for review.

Jurisdiction is relinquished.

### DISSENTING OPINION BY Judge COVEY.

I respectfully dissent from the Majority's holding that the Monument Sign Landscaping and Maintenance Agreement (Maintenance Agreement) approved by the Westtown Township (Township) Board of Supervisors (Board) constitutes a separate "adjudication" amending the court-approved Settlement Agreement (Settlement

---

8.  As stated above, Paragraph 7 of the Settlement Agreement states, in pertinent part, that "[t]he maintenance responsibilities of CCO shall be set forth in a separate Maintenance Agreement which shall be incorporated by reference into this Agreement and made a part hererof." (R.R. at 35a).

9.  *See also* 12 P.L.E. Contracts § 314 (2013) ("The modification of a contract requires a new agreement, and when this is found to occur a new contract springs into existence. A modification does not displace a prior valid contract; rather, the new contract acts as a substitute for the original contract, but only to the extent that it alters it. The contract may be abrogated in part and stand as to the residue ....") (footnotes omitted).

Agreement) between the Township and Chester County Outdoor, LLC (CCO) from which Money could appeal. I dissent because the Majority has stepped outside its role as an appellate reviewing court to make findings of fact, has disregarded the parties' express contractual terms, has misconstrued the meaning of adjudication, and has ruled contrary to well-established law favoring settlement agreements.

First, the Majority creates its own issue by stating that "[t]he question in this case is whether Money could appeal the Board's approval of the Maintenance Agreement **which modified the terms of the Settlement Agreement** because it is a new and distinct adjudication." Majority Op. at 312 (emphasis added). The Majority concludes that "because the Maintenance Agreement changed the substantive terms of the Settlement Agreement by now permitting light to spill onto Money's property, it constitutes a separate 'adjudication'." Majority Op. at 313. There was no hearing below or determination made that the Maintenance Agreement in fact modified the Settlement Agreement terms. Nor was there a hearing or a determination made that "the Settlement Agreement . . . permitt[ed] light to spill onto Money's property." *Id.* Rather, the issue before this Court is whether the Board's approval of the Maintenance Agreement is an appealable adjudication.

The Majority also declares that "[t]he Maintenance Agreement changed the express and substantive terms of the Settlement Agreement by removing 8.f.'s prohibition." Majority Op. at 313. Section 8(f) of the Settlement Agreement provides that the proposed billboard shall not "[s]pill any light or glare onto neighboring properties or the roadway . . . ." Settlement Agreement at 7. However, the record is void of any factual determination that any light or glare spilled onto neighboring properties

or roadways. There exists nothing in the record to support the Majority's statement beyond Money's unsubstantiated allegation. The Majority states that:

> [Attorney David] Malman, counsel for Money, appeared at the [February 6, 2012] meeting to object to the Board's approval of the Maintenance Agreement because the screening proposed by CCO did not comply with CCO's Landscape Plan **or with the requirements of Paragraph 8 of the Settlement Agreement that the sign should not 'spill any light or glare onto neighboring properties or the roadway.'**

Majority Op. at 310 (emphasis added). However, Attorney Malman never formally objected to or mentioned Paragraph 8 of the Settlement Agreement at the February 6, 2012 meeting, nor is there any record evidence as recited by the Majority that the Maintenance Agreement removed Section 8(f)'s prohibition. To the contrary, Section 9(c) of the Maintenance Agreement specifically provides that the "[Maintenance] Agreement and the Settlement Agreement shall constitute the entire agreement among the Parties . . . ." Maintenance Agreement at 3. In addition, according to the minutes of the Board's February 6, 2012 meeting, at which the Maintenance Agreement was approved, there was no evidentiary hearing. Indeed, the minutes reveal that

> David Malman, representing Ms. Money, said that in discussion with [Township Landscape Consultant] Mr. Committa it appeared that Mr. Committa did not know about the berm and mounding and that he [felt], in his opinion that Mr. Committa [did] not know what the effect of the buffer [would] be on Old Wilmington Pike. Mr. Malman said the only request he [had] on behalf of his client is that the Township make sure that it is

getting the elevation that was agreed to in the Settlement Agreement.

Board's February 6, 2012 Meeting at 3. At the meeting, Malman requested that the Maintenance Agreement approval be deferred because he did not feel an informed judgment could be made; he never objected to the Maintenance Agreement's approval. Thus, the record evidence does not support the Majority's statement that Section 8(f) of the Settlement Agreement has been eliminated or violated.

Second, the Settlement Agreement specifically referenced a Maintenance Agreement which was to be incorporated into the Settlement Agreement and made a part thereof upon its completion. Paragraph 7 of the Settlement Agreement expressly provided:

> CCO shall maintain the Proposed Monument Sign in good working order and repair at all times. In addition, CCO shall maintain and upkeep all landscaping planted on the Wilmington Pike Property, including replacing deceased or dead landscaping. **The maintenance responsibilities of CCO shall be set forth in a separate Maintenance Agreement which shall be incorporated by reference into this Agreement and made part hereof.**

Settlement Agreement at 6 (emphasis added). The Maintenance Agreement does nothing more than list CCO's maintenance responsibilities, which obligation it agreed to in the Settlement Agreement. The record demonstrates that Money was aware of the Settlement Agreement terms, including the provision concerning a subsequent Maintenance Agreement which may or may not effect enforcement of Section 8(f), she was given the opportunity to appear before the Board and present evidence, and had the right and ability to become a party to the Settlement Agreement to insure compliance. As will be discussed below, the Maintenance Agreement is not a separate and distinct contract, but rather is expressly incorporated and made part of the Settlement Agreement.

The Majority maintains that because the Settlement Agreement contains an integration clause, the Maintenance Agreement cannot be integrated through mere incorporation; and, thus, the Maintenance Agreement is a separate adjudication. However, the Majority confuses the terms integration and incorporation. An "integration clause" is "[a] contractual provision stating that the contract represents the parties' complete and final agreement and **supersedes all informal understandings and oral agreements relating to the subject matter of the contract.**" *Black's Law Dictionary* 860 (9th ed. 2009) (emphasis added). An "[i]ncorporation by reference" on the other hand, is "[a] method of making a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained within the primary one." *Black's Law Dictionary* 834 (9th ed. 2009).

> It is a general rule of law in the Commonwealth that where a contract refers to and incorporates the provisions of another, both shall be construed together. *Shehadi v. Northeastern Nat'l Bank,* 474 Pa. 232, 236, 378 A.2d 304, 306 (1977) (citations omitted). It is well-settled that clauses in a contract should not be read as independent agreements thrown together without consideration of their combined effects. *Brown v. Cooke,* 707 A.2d 231, 233 (Pa.Super.[ ]1998)[ (]quoting *In re Binenstock's Trust,* 410 Pa. 425, 190 A.2d 288 (1963)[) ].

*Trombetta v. Raymond James Financial Services, Inc.,* 907 A.2d 550, 560 (Pa.Super.2006).

The Settlement Agreement expressly and mandatorily "incorporated by reference" the Maintenance Agreement. Settlement Agreement at 6. In fact, the Maintenance Agreement expressly confirmed the "incorporated by reference" statement, wherein, the Maintenance Agreement mirrors the Settlement Agreement with similar mandatory language that reads: "This Agreement and the Settlement Agreement shall constitute the entire agreement...." Maintenance Agreement at 3. When interpreting a contract we must give effect to all the words contained therein. *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 962 A.2d 639 (2009). To read the Settlement Agreement and Maintenance Agreement as two separate, independent documents as if they were intended to stand alone would require this Court to rewrite the parties' agreement contrary to the plain meaning of "incorporated by reference into this Agreement and made part hereof." R.R. at 51a. "When the terms of a written contract are clear, this Court will not re-write it or give it a construction in conflict with the accepted and plain meaning of the language used." *Creeks v. Creeks*, 422 Pa.Super. 432, 619 A.2d 754, 756 (1993).

The Majority cites *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425 (2004), to support the proposition that the Settlement Agreement contains an integration clause because it expresses all of the parties agreements made prior to its execution. However, in *Yocca*, the "integration clause" was **not** included in the original alleged contract, the brochure, but rather only contained in the follow-up contract (Contract) to the brochure. The Court found that the brochure was not part of the Contract because the integration clause in the Contract specified: **"This Agreement contains the entire agreement** of the parties with respect to the matters provided for herein **and shall**

supersede any representations or agreements previously made** by or entered into by the parties hereto." *Id.* at 489, 854 A.2d at 431 (emphasis added). Here, the Settlement Agreement expressly incorporated the Maintenance Agreement and made it a part thereof.

The Majority also cites *Melat v. Melat*, 411 Pa.Super. 647, 602 A.2d 380 (1992), for the proposition that: "A modification does not displace a prior valid contract; rather, the new contract acts as a substitute for the original contract, but only to the extent that it alters it. The original contract may be abrogated in part, with the residue remaining intact." Majority Op. at 313 (quoting *Melat*, 602 A.2d at 385). However, the stipulation in *Melat* contained the following clause: "*Except as modified* by this Stipulation, the Property Settlement Agreement of the parties ... *shall remain in full force and effect and the same is hereby ratified and confirmed.*" *Id.* at 385. There is no such clause in the Maintenance Agreement. As stated above, the Maintenance Agreement was incorporated by reference into the Settlement Agreement, and the law mandates that the parties' words be honored.

The Majority would reverse because "a mere 'incorporation by reference' provision only incorporates what exists and to which there was **a meeting of the minds** at the time of the execution; it does not mean that new terms that are a clear modification of express contract terms are incorporated into the agreement." Majority Op. at 313 (emphasis added). However, there could be no "meeting of the minds" concerning Money because she was not a party to the Settlement Agreement, nor has a hearing or finding been made that there was a modification of any Settlement Agreement terms. Based on the location of Money's property she was given notice for the express purpose of joining in the pro-

ceedings. She chose not to. Now that the Maintenance Agreement has been incorporated in accordance with the Settlement Agreement terms, she has no standing to challenge either Agreement. As the trial court recognized, the Maintenance Agreement was part of a settlement of a zoning ordinance challenge entered into between the Township and CCO. The trial court stated: "[Money] ... was not a party to the litigation ... nor did she seek intervention...." Trial Ct. Op. at 1. Further, "at the settlement hearing before the [trial court] ... she failed to obtain party status or object to the settlement." Trial Ct. Op. at 2.

As Money admitted in her Petition for Review, the Maintenance Agreement is an "implementation of the Settlement Agreement." Petition for Review at 7. Money's appeal is an attempt to enforce the Settlement Agreement by appealing from the Maintenance Agreement. While research has not revealed a case on point, this Court dealt with a similar issue in *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Kenrich Athletic Club, License No. C–1927*, 49 A.3d 13 (Pa. Cmwlth.2012). In *Kenrich Athletic Club*, an Administrative Law Judge (ALJ) rendered a decision suspending Petitioner's liquor license, but did not issue the suspension dates. Petitioner did not appeal from the ALJ's decision to the Pennsylvania Liquor Control Board (PLCB). However, Petitioner did file an appeal from the ALJ's subsequent decision, wherein, he set the suspension dates in accordance with his initial adjudication. This Court held that "[t]he subsequent ministerial act by an ALJ of **implementing**/enforcing an unappealed adjudication is not also an adjudication appealable to the [PLCB]." *Id.* at 20

(emphasis added). Similarly, the Board's approval of the Maintenance Agreement which **implemented one term** of the unappealed Settlement Agreement is also not an appealable adjudication.

As stated by the trial court:

It is counterintuitive that the agreed upon implementation of a court ordered settlement be deemed an adjudication pursuant to the [Law] when the trial court has jurisdiction over the settlement and [Money] is voluntarily not a party to that settlement. The Township's approval of the [Maintenance Agreement] is not a final order in these circumstances.

Trial Ct. Op. at 3.

Third, Section 101 of the Local Agency Law (Law),[1] 2 Pa.C.S. § 101, defines an adjudication as: "Any **final** order, decree, **decision,** determination or ruling by an agency **affecting personal or property rights,** privileges, immunities, duties, liabilities **or obligations** of any or all **of the parties to the proceeding** in which the **adjudication** is made." (Emphasis added). "The term[ ] ... 'adjudication' [is a] term[ ] of art with 'peculiar and appropriate meaning[s],' and which the ... [Law] use[s] consistently where questions of appealability ... are concerned." *Mercury Trucking, Inc. v. Pennsylvania Pub. Utility Comm'n*, 618 Pa. 175, 190, 55 A.3d 1056, 1065 (2012).

In applying the plain meaning of what constitutes "an adjudication," it is critical to recognize that an adjudication is a "**final ... determination ... affecting ... rights ... or obligations ... of the parties to the proceeding in which the adjudication is made.**" 2 Pa.C.S. § 101 (emphasis added). "The Statutory Con-

1. 2 Pa.C.S. §§ 551–555, 751–754. "The definitions provided in Chapter 1 of Title 2 of the Pennsylvania Consolidated Statutes apply to the Local Agency Law." *Lake Erie Promotions, Inc. v. Erie County Bd. of Assessment Appeals,* 60 A.3d 194, 198 n. 10 (Pa.Cmwlth.2012).

struction Act provides that in interpreting a statute it is incumbent that the reviewing court endeavor to ascertain the intent of the Legislature and that when the words of a statute are clear and free of ambiguity we must interpret those words by their plain meaning." *Commonwealth v. Cox,* 603 Pa. 223, 283, 983 A.2d 666, 703 (2009). **"Final"** is defined as "not to be altered or undone." *Webster's New College Dictionary* 428 (3rd ed. 2008). **"Determination"** is defined as "[t]he act of making or arriving at a decision." *Webster's New College Dictionary* 315 (3rd ed. 2008). **"Proceeding"** is defined as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." *Black's Law Dictionary* 1324 (9th ed. 2009). **"Adjudication"** is defined as "[t]he legal process of resolving a dispute[.]" *Black's Law Dictionary* 47 (9th ed. 2009).

In the instant case, the proceeding is the action commenced by CCO challenging the Township's Ordinance prohibiting billboards to which Money chose not to be a party. The Township and CCO decided to resolve the matter based upon the Settlement Agreement terms. Said action ended on September 1, 2011 when the trial court approved the Settlement Agreement and became final when no appeal was filed. Because the Maintenance Agreement did not and could not resolve the dispute since the lawsuit had already concluded, it was not the final determination of the proceeding. Accordingly, the Maintenance Agreement was not an adjudication.

Section 752 of the Law, 2 Pa.C.S. § 752, provides: "Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals...." However, "[i]t is well settled

that if an agency action is not an 'adjudication', then it is not subject to judicial review by way of appeal." *Shaulis v. Pennsylvania State Ethics Comm'n,* 739 A.2d 1091, 1099 (Pa.Cmwlth.1999).

Fourth, the Majority disagrees with the use of settlement agreements in zoning ordinance disputes; however, the law has repeatedly favored and upheld settlement agreements in such circumstances, especially in the instant action where the challenged zoning provision has been held unconstitutional. The Majority states, without citation to any legal authority:

> [S]ettlement agreements have always been problematic in zoning cases, **especially those that allow waiver, not just of discretionary matters but from requirements in zoning ordinances or regulations,** because those waivers are tantamount to *ad hoc* amendments of those provisions that do not comply with the mandatory procedures contained in the Municipalities Planning Code.[FN2]

> FN.2 Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

Majority Op. at 312 (emphasis added). However, this case does not involve a waiver of either discretionary matters or requirements set forth in zoning ordinances or regulations. The Settlement Agreement was the resolution of a challenge to the alleged *de jure* exclusion of off-premises advertising signs and billboards in the Township. Said exclusion is facially unconstitutional. *See Interstate Outdoor Advertising, L.P. v. Zoning Hearing Bd. of Warrington Twp.,* 39 A.3d 1019 (Pa. Cmwlth.2012). Further, the Settlement Agreement was approved by the Board at a public meeting. As admitted by Money in her Petition for Review, "Money did not object to the Township's approval of the Settlement Agreement with CCO." Petition for Review at 4. Moreover, the Settlement Agreement was approved by the trial

court, making it a "court-ordered settlement". Trial Ct. Op. at 3. Thus, there is nothing problematic about the Settlement Agreement in the instant case.

Finally, "[w]hen an agency's decision ... leaves a complainant with no other forum in which to assert his or her rights, ... the agency's act is an adjudication." *Montessori Regional Charter Sch. v. Millcreek Twp. Sch. Dist.*, 55 A.3d 196, 201 (Pa.Cmwlth.2012). Here, Money has taken steps to protect her property interests with respect to implementation of the Settlement Agreement by intervening in the Civil Action and filing a tort action against CCO and the Township. The Majority is seeking to provide Money a remedy when she has already availed herself of recourse. Accordingly, the trial court properly determined that the Maintenance Agreement was not an adjudication under the Law.

Accordingly, for all of the above stated reasons, I believe the trial court's order should be affirmed.