**LAKE ERIE PROMOTIONS, INC.**

v.

**ERIE COUNTY BOARD OF ASSESSMENT APPEALS**

v.

**Appeal of: Wattsburg Area School District and Greenfield Township**

**Appeal of Wattsburg Area School District.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 2012.

Decided Dec. 28, 2012.

Michael J. Visnosky, Erie, for appellant.

John J. Mehler, Erie, for appellee Lake Erie Promotions, Inc.

BEFORE: LEAVITT, Judge, and BROBSON, Judge (P.), and FRIEDMAN, Senior Judge.

OPINION BY Judge BROBSON.

Appellant Wattsburg Area School District (School District) appeals from two orders of the Court of Common Pleas of Erie County (trial court). The first order, issued on March 8, 2012, sustained a prior order of the trial court, granting Lake Erie Promotions, Inc.'s (Taxpayer) Application for Determination of Tax Refunds and/or Tax Credits. The second order, issued on March 9, 2012, established the analysis the parties were to use in determining the amount of interest owed to Taxpayer with respect to the involved tax refunds.[1] For the reasons set forth below, we reverse the trial court's March 8, 2012 order, vacate the trial court's March 9, 2012 order, and remand for further proceedings.

In 2005, Taxpayer filed with the trial court an appeal of a tax assessment of its property located in Greenfield Township.[2] (Reproduced Record (R.R.) at 98a.) The trial court remanded the case to the Erie County Board of Assessment Appeals (Board), which conducted a hearing on December 8, 2010. (Id.) Thereafter, on February 22, 2011, the Board Chairman, Robert J. Tullio, issued a letter (Tullio Letter) to counsel for Taxpayer and the School District. (Id. at 98a, 115a.) The Tullio Letter indicated that the Board had reached a decision on the tax assessment appeal, explained the Board's findings and analysis, and specified new assessments for the years 2006 to 2011. (Id. at 9a–10a.) Believing the Tullio Letter to be a final decision of the Board, on March 17, 2011, the School District filed an appeal with the trial court. (Id. at 11 a–16a.) The School District did not include the 2005 Docket Number on its appeal, and the trial court docketed the appeal at a new docket number (the 2011 Docket Number).[3] On May 2, 2011, the Board issued six Hearing Decision Notifications, containing the new assessment values as listed in the Tullio Letter. (Id. at 32a–37a.) The Hearing Decision Notifications also contained a mailing date, the property

---

1. Although identified in the caption, Erie County Board of Assessment Appeals and Greenfield Township filed notices of non-participation pursuant to Pa. R.A.P. 908.

2. The docket number issued for the original action is 14246–2005 (the 2005 Docket Number).

3. The docket number issued for the School District's appeal is 11048–2011.

location, the parcel number, the old assessment values, and the effective date of the new assessments. (*Id.*) The Hearing Decision Notifications, however, did not include any findings or analysis by the Board. And, like the Tullio Letter, the Hearing Decision Notifications did not include any information about a right to appeal.

Throughout the pendency of the litigation, Taxpayer paid its taxes to all involved taxing bodies under protest pursuant to Section 8854(c) of the Consolidated County Assessment Law (Law), 53 Pa.C.S. § 8854(c).[4] (R.R. at 98a.) On May 3, 2011, Erie County, one of these taxing bodies, refunded the overpayment it received from Taxpayer based on the new assessments, but Greenfield Township and the School District held the overpayments they received from Taxpayer in escrow pursuant to Section 8854(c) of the Law. (*Id.*) Also on May 3, 2011, Taxpayer filed a notice of cross-appeal of assessment and reply to notice of assessment appeal at the 2011 Docket Number. (*Id.* at 17a–21a.) On December 9, 2011, Taxpayer filed an Application for Determination of Tax Refunds and/or Tax Credits in order to require Greenfield Township and the School District to remit payment of the refunds owed to Taxpayer. (*Id.* at 22a–50a.)

After the trial court held a hearing, the School District filed a motion to transfer its appeal from the 2011 Docket Number to the 2005 Docket Number, and Taxpayer filed a reply opposing the transfer. (*Id.* at 80a–97a.) During that hearing, the trial court and parties appeared to agree that the Tullio Letter was a final decision. The trial court, however, expressed concern as to whether it lacked jurisdiction because the School District's appeal was not filed at the 2005 Docket Number. On Febru-

ary 14, 2012, the trial court issued an order, wherein, upon further review, it concluded that the Hearing Decision Notifications constituted the final decision of the Board, not the Tullio Letter. (*Id.* at 98a–100a.) Thus, the trial court determined that the appeal filed by the School District on March 17, 2011, was premature and not a valid, timely appeal of the Board's May 2, 2011 decision. As a result, the trial court ruled that it lacked jurisdiction to hear the appeal. Moreover, the trial court determined that because the School District had not appealed the Hearing Decision Notifications mailed by the Board on May 2, 2011, the Board's decision was final. (*Id.* at 100a.)

In the same order, the trial court refused to transfer the School District's appeal to the 2005 Docket Number. The trial court reasoned that even if it were to transfer the appeal to that docket number, the appeal would still be untimely and the trial court would still lack jurisdiction to hear the appeal. (*Id.*) The trial court then ordered the parties to provide the trial court with a stipulation regarding the pre-interest refund amount owed to Taxpayer. The trial court further ordered the parties to submit briefs regarding whether interest was due to Taxpayer and, if so, the interest rate to be utilized in calculating the amount of interest owed to Taxpayer. (*Id.*) The School District filed a motion for reconsideration of the trial court's February 14, 2012 order, which the trial court granted. (*Id.* at 101 a–13 a.)

On March 8, 2012, the trial court entered an order sustaining its February 14, 2012 order to grant Taxpayer's Application for Determination of Tax Refunds and/or Tax Credits. (*Id.* at 114a–16a.) The trial

---

**4.** Subsequent to the filing of the subject appeal, the Act of October 24, 2012, P.L.2012–160, amended Section 8854 of the Law, but it did not amend subsection (c). The amendment, therefore, does not impact this matter.

court reasoned that it has jurisdiction to hear appeals of final orders of administrative agencies (quasi-judicial orders) under Pennsylvania Rules of Appellate Procedure 341 and 1551, and that an appeal made of anything other than a final order is not valid, thereby depriving the trial court of jurisdiction. (*Id.* at 114a.) The trial court reiterated that the Tullio Letter was not the Board's final order, labeling it an "anomaly," because the Board does not regularly issue letters outlining its forthcoming decisions. (*Id.* at 114a–15a.) The trial court noted that the Board typically issues Hearing Decision Notifications once it reaches a decision on an appeal, and those notifications constitute the Board's final orders subject to appeal. (*Id.* at 115a.)

The trial court then stated that the Board must comply with some due process requirements in issuing its decision. (*Id.*) The trial court stated that Section 8854 of the Law, which addresses appeals from the Board's decision to the trial court, does not define what constitutes a "decision" of the Board. (*Id.*) Consequently, for purposes of guidance, the trial court looked to Section 8844(e)(2) of the Law,[5] which relates to appeals from the county assessment office to the Board. (*Id.*) In noting that Section 8844(e)(2) requires the Board to "give written notice of its decision to the appellant, property owner and affected taxing districts," the trial court observed that the Tullio Letter was not mailed to all the required parties; rather, it was mailed to counsel for Taxpayer and the School District only. (*Id.*) The trial court also

observed that the Hearing Decision Notifications issued by the Board on May 2, 2011, were mailed to all parties. (*Id.*) Furthermore, the trial court took judicial notice that it was from those notifications that Erie County issued a refund to Taxpayer. (*Id.*) Thus, the trial court concluded that the Tullio Letter was not a final administrative order and that the School District was required to appeal the May 2, 2011 Hearing Decision Notifications, which it failed to do. (*Id.*) The trial court further concluded that the School District's appeal from the Tullio Letter was invalid for being untimely (*i.e.,* too early). (*Id.*) Consequently, the trial court reasoned that, even if it were to transfer the appeal to the 2005 Docket Number, the appeal would remain invalid and the trial court would lack jurisdiction to hear it. (*Id.*)

On March 9, 2012, the trial court issued an order establishing the analysis the parties were to use in determining the interest owed to Taxpayer. (Certified Record (C.R.), Item No. 51.1.) The School District now appeals the March 8, 2012 order and the March 9, 2012 order (to the extent that the latter order constituted an entry of judgment).

▇▇ On appeal to this Court,[6] the School District argues that the trial court erred in holding that the Tullio Letter was not the Board's final decision subject to appeal. Alternatively, the School District argues that the trial court erred in failing to conclude that the School District's appeal of the Tullio Letter constituted a valid appeal of the Hearing Decision Notifica-

---

5. Section 8844(e)(2) of the Law, *as amended,* 53 Pa.C.S. § 8844(e)(2). Subsequent to the filing of the subject appeal, Section 8844(e)(2) of the Law was amended by the Act of October 24, 2012, P.L.2012-160. That amendment, however, does not impact this matter.

6. This court's standard of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by substantial evidence. *Appeal of Marple Springfield Ctr., Inc.,* 530 Pa. 122, 126, 607 A.2d 708, 709–10 (1992).

tions. Finally, the School District argues that the trial court erred in refusing to transfer the School District's appeal from the 2011 Docket Number to the 2005 Docket Number.

■ We will address the School District's first two arguments together, as the essence of both is that the School District's appeal should be deemed valid. Notably, the Law contains no requirements regarding the content or format of a decision of the Board that would enable us to readily identify the decision as final and subject to appeal.[7] Nevertheless, the Local Agency Law[8] provides guidance in this regard. *See* 2 Pa.C.S. § 751(a)-(b) (providing, in part, that Subchapter B of Chapter 7, relating to judicial review of local agency action, applies to all local agencies and "to any adjudication which under any existing statute may be appealed to a court of record, but only to the extent not inconsistent with such statute"); *see also In re Mackey*, 687 A.2d 1186, 1192 n. 16 (Pa. Cmwlth.1997) (applying Local Agency Law in tax assessment appeal with respect to class certification to extent that Local Agency Law was not inconsistent with Second Class A and Third Class County Assessment Law[9] when no other applicable

provisions existed because "the Local Agency Law seem[ed] to be the only appropriate statute" to apply), *appeal denied sub. nom, In re Class Action Appeal of Mackey*, 548 Pa. 638, 694 A.2d 623 (1997). Under the Local Agency Law, an "adjudication" is defined as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made."[10] 2 Pa.C.S. § 101. Moreover, "[a] letter from an agency may qualify as an adjudication so long as the letter" meets the definition of "adjudication." *Wortman v. Philadelphia Comm'n on Human Relations*, 139 Pa.Cmwlth. 616, 591 A.2d 331, 333 (1991).

■ After conducting a thorough review of the Tullio Letter and the set of Hearing Decision Notifications, we conclude that both contain characteristics of finality, such that we are unable to determine which truly constitutes the final decision of the Board. The Tullio Letter indicated that "[t]he Board ... ha[d] reached a decision" regarding the appeal, and it provided findings of fact and an analysis of the

7. Section 8844(e)(2) of the Law provides, however, that once the Board makes a decision, the Board must "give written notice of its decision to the appellant, property owner and affected taxing districts." The trial court based its decision to designate the Hearing Decision Notifications as the Board's final decision, in part, on the fact that the Hearing Decision Notifications were sent to all parties, whereas the Tullio Letter was not. (R.R. at 115a.) As pointed out by the School District, however, the issue of whether the Board provided proper notice of its final decision to all the parties is separate from the issue of whether a communication issued by a representative of the Board is a final decision from which a party may appeal. Here, the trial court raised the issue of improper notice only in the context of its effect on whether the

Tullio Letter is the final decision of the Board. Because no party makes a separate challenge to the Board's decision based on a violation of Section 8844(e)(2)'s notice requirement, we will not address this issue.

8. 2 Pa.C.S. §§ 551–555, 751–754.

9. Act of June 26, 1931, P.L. 1379, *as amended, formerly* 72 P.S. §§ 5342–5350, repealed by the Act of October 27, 2010, P.L. 895.

10. The definitions provided in Chapter 1 of Title 2 of the Pennsylvania Consolidated Statutes apply to the Local Agency Law. *Lincoln Philadelphia Realty Assocs. I v. Bd. of Revision of Taxes of the City and Cnty. of Philadelphia*, 563 Pa. 189, 214 n. 20, 758 A.2d 1178, 1192 n. 20 (2000).

parties' respective appraisals. (R.R. at 14a.) Furthermore, the Tullio Letter established the property's assessable value and set forth the Board's revised tax assessments of the property for the years 2006 to 2011. (*Id.* at 9a–10a.) The Tullio Letter, however, ambiguously concluded by providing that the Board trusted that the information in the Tullio Letter was satisfactory for the recipients' "present purposes."[11] (*Id.* at 10a.) Also, the trial court characterized the Tullio Letter as an "anomaly," as the Board does not regularly issue letters outlining its decisions. (*Id.* at 115a.) Rather, the Board customarily issues Hearing Decision Notifications when rendering final decisions on tax assessment appeals. (*Id.*) Here, the Hearing Decision Notifications did not contain any findings or analysis. (*Id.* at 32a–37a.) Each Hearing Decision Notification, however, contained information that was omitted from the Tullio Letter, such as a mailing date, the property location, the parcel number, the old assessment values, and the effective date of the new assessments. (*Id.*) In sum, the Tullio Letter and the set of Hearing Decision Notifications both provided the outcome of the tax assessment appeal, and both affected Taxpayer's property rights and tax obligations, but neither included sufficient indicia of finality to enable us to identify definitively one as the final decision of the Board over the other.

In light of the discussion above, we conclude that the School District's appeal is valid. First, the School District should not be deprived of its right to appeal as the result of the confusion *caused by* the Board's actions in communicating its decision on the tax assessment appeal. Although an agency is not required to include language explicitly stating that a communication is the final decision of the agency, under the circumstances of this case, the Board had a burden to clearly indicate which communication it intended to be its final decision.[12] We cannot ignore the likely possibility that had the School District assumed that the Board would send the Hearing Decision Notifications and waited to appeal from those notifications, Taxpayer may have argued that the Tullio Letter constituted the Board's final decision and that the School District's appeal was too late. Second, the law favors allowing a party to proceed with its appeal in comparable situations. *See H.D. v. Dep't of Pub. Welfare,* 751 A.2d 1216, 1219 (Pa. Cmwlth.2000) (providing that appeal *nunc pro tunc* is permitted when there is delay in filing of appeal caused by breakdown in administrative process and when "the appeal was filed within a short time after [the appellant] learn[s] of and ha[s] an opportunity to address the untimeliness; ... the elapsed time period is of very short duration; and ... the appellee will not be prejudiced by the delay"); Pa.

11. Notably, a computer file name was also provided at the bottom of the Tullio Letter, and part of that file name included the phrase "Lake Erie Promotions Proposed Decision." (R.R. at 10a.)

12. *See Wayne Knorr, Inc. v. Dep't of Transp.,* 973 A.2d 1061, 1090 (Pa.Cmwlth.2009) (holding that, in context of determining when contractor's claim for payment of services rendered to government agency accrued, letter issued by government agency was not final decision denying contractor's claim, in part, because government agency did not follow its

regular practice of including language in letter indicating that letter was final determination and advising contractor of time within which contractor could appeal). *But see Ferguson Elec. Co., Inc. v. Dep't of Gen. Servs.,* 3 A.3d 681, 686 (Pa.Cmwlth.2010) (stating that *Knorr* does not stand for proposition that when government agency denies contractor's claim for payment for services rendered via letter, government agency must include language stating that letter was agency's final decision and informing contractor of its right to appeal).

R.A.P. 905(a)(5) [13] ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."). Thus, although it would have been prudent for the School District to file an appeal from the Hearing Decision Notifications in addition to filing an appeal from the Tullio Letter, we refuse to deny the School District its right to appeal, as the School District reasonably believed that the Tullio Letter constituted the final decision of the Board and promptly filed an appeal accordingly. The trial court, therefore, erred in concluding that the School District's appeal from the Tullio Letter was invalid.

We next address the School District's argument that the trial court erred in refusing to transfer the School District's appeal to the 2005 Docket Number. The School District argues that the transfer of a case is required with respect to similar situations, such as when an appeal or other matter is filed in the wrong court or wrong division of a court. *See* 42 Pa.C.S. § 5103(a), (c). The School District, therefore, argues that transferring its appeal to the 2005 Docket Number is also proper here, where the appeal was filed before the same court under a new docket number simply because of a clerical error.

■ This Court does not necessarily agree that the appeal of the Tullio Letter was filed at the "wrong" docket number.[14] Nevertheless, even if we were to conclude that the School District incorrectly filed its appeal at the 2011 Docket Number, the trial court should have consolidated [15] the

13. In its brief, the School District cites Pennsylvania Rule of Appellate Procedure 905(a)(5) in support of its argument that its appeal should be deemed timely and, thus, valid. Furthermore, in concluding that it did not have jurisdiction to consider the School District's appeal, the trial court stated that "[t]he [c]ourt of [c]ommon [p]leas has jurisdiction to hear appeals of final orders of administrative agencies" under Pennsylvania Rules of Appellate Procedure 341 and 1551, and that the Tullio Letter was not the Board's final order. (R.R. at 114 a–15 a.) We note, however, that "the Rules of Appellate Procedure do not apply to the courts of common pleas vested with jurisdiction to decide an appeal from local agency adjudications unless that court has specifically adopted those Rules." *Thompson v. Zoning Hearing Bd. of Horsham Twp.*, 963 A.2d 622, 625 n. 6 (Pa. Cmwlth.2009). Here, there is no indication that the trial court has done so. Nevertheless, the Pennsylvania Rules of Appellate Procedure provide helpful guidance with respect to our disposition of this case.

14. The trial court apparently took this position because it previously handled an appeal *by Taxpayer* related to these assessments and issued an order dated June 16, 2009. In its June 2009 order, the trial court essentially rendered a settlement agreement void due to

lack of notice to all interested parties and remanded the matter to the Board for further proceedings. The trial court did not retain jurisdiction, and it does not appear as if the trial court was required to act further in the underlying appeal. Under these circumstances, it is unclear to this Court as to why a party would be required to file an appeal of a new determination at an older docket number, particularly when the party filing the appeal was not the party who filed the earlier appeal. It may be that the trial court relied upon Local Rule 305(e) (formerly Local Rule 305(i)) of the Court of Common Pleas of Erie County, relating to duties of the prothonotary, which provides as follows:

> (e) In all appeals to the Court from a municipal zoning board or municipalities, when said appeal has been returned to said board or municipality by the Court, should the matter then be returned to Court, it will retain the same docket number as it had on the original appeal.

It does not appear to this Court, however, that the Board is a "municipal zoning board" or "municipality," and, therefore, the local rule would not apply.

15. Contrary to the trial court's and parties' focus on whether the appeal filed at the 2011 Docket Number should be transferred to the

matters for consideration of the appeal on the merits. The parties have not cited, and we are unaware of, any rule that prevents the trial court from consolidating the matters under these circumstances. On the contrary, provisions in the Rules of Civil Procedure and the Judicial Code clearly express an aversion to our courts dismissing cases based on technicalities with respect to filing errors. *See* Pa. R.C.P. No. 126 ("The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties."); Pa. R.C.P. No. 213(a) ("In actions pending in a county which involve a common question of law or fact or which arise from the same transaction or occurrence, the court on its own motion or on the motion of any party . . . may order the actions consolidated. . . ."); 42 Pa.C.S. § 708(a) ("No objection to a governmental determination shall be defeated by reason of error in the form of the objection or the office of clerk of court in which the objection is filed."); 42 Pa.C.S. § 5103(a), (c). In spite of the School District's supposed clerical error, the School District's appeal promptly came before the trial court (as determined above). Thus, the trial court abused its discretion in failing to consider the merits of the School District's appeal.

Accordingly, we reverse the trial court's March 8, 2012 order, and we vacate the trial court's March 9, 2012 order, which was predicated on the March 8, 2012 order. We remand this case with instructions that the trial court either proceed with consideration of the School District's appeal on the merits at the 2011 Docket Number or, alternatively, consolidate the 2005 Docket Number, consolidation of the

appeal filed at the 2011 Docket Number with the matter filed at the 2005 Docket Number for consideration of the appeal on the merits.

### *ORDER*

AND NOW, this 28th day of December, 2012, the order of the Court of Common Pleas of Erie County (trial court), dated March 8, 2012, is REVERSED and the trial court's order dated March 9, 2012, is hereby VACATED. It is further ordered that the matter is REMANDED with instructions that the trial court either proceed with consideration of Wattsburg Area School District's appeal on the merits at the 2011 Docket Number or, alternatively, consolidate the appeal filed at the 2011 Docket Number with the matter filed at the 2005 Docket Number for consideration of the appeal on the merits.

Jurisdiction relinquished.

matters is the more suitable remedy.