587 A.2d 817

**ATLAS DEVELOPMENT ASSOCIATION, INC., t/a Mount Carmel Nursing Home, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1990.

Decided Jan. 11, 1991.

Publication Ordered March. 12, 1991.

Charles J. Artz, with him, Charles O. Barto, Jr., Charles O. Barto, Jr. and Associates, Harrisburg, for petitioner.

Cynthia White Williams, with her, Bruce G. Baron, Asst. Counsels, Harrisburg, for respondent.

Before SMITH and KELLEY, JJ., and BARRY, Senior Judge.

BARRY, Senior Judge.

Petitioner Atlas Development Association, Inc. t/a Mount Carmel Nursing Home (Mount Carmel) seeks our review of an order of the Secretary of the Department of Welfare (DPW) dated May 4, 1988, which affirmed a December 2, 1987 decision of the Department of Public Welfare's Office of Hearings and Appeals to classify interest earned on a debt service reserve fund as investment income and offset it against allowable interest expense on capital indebtedness.

Mount Carmel, a participant in the Medical Assistance and Medicare Programs, incurred debt through a bond issue in the total amount of $3,500,000.00 to finance the construc-

tion of a 120–bed intermediate nursing care facility. As a condition of the bond issue, Mount Carmel was obliged to deposit $275,000.00 of the proceeds from the sale of bonds into a debt service reserve fund (DSRF) to be held by a trustee. The net proceeds, $3,225,000.00, were available for the construction project.

Under the terms of the bond issue agreement, the DSRF would be invested by the trustee and the accumulated earnings and principal would be used to secure the payment of the bond interest in the case of default, or if no default occurred, to pay a part of the bond principal when the bonds matured. Mount Carmel did not have access to or control over the DSRF or its accumulated earnings.

Mount Carmel filed a Medicaid cost report for the fiscal year ending December 31, 1983. DPW subsequently audited Mount Carmel's report (Audit Report No. 84–205) and reduced the interest on capital indebtedness to be paid to the facility by $9,763.00, which amount reflects the interest earned on the DSRF.[1] The auditors held the income generated by the DSRF to be investment income to Mount Carmel, and offset it against allowable interest expense pursuant to 55 Pa.Code § 1181.202 and § 1181.273(a), respectively.

Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

 Several issues are presented by the parties for our consideration, the first of which is whether the interest earned on the DSRF is properly classified as investment income.

55 Pa.Code § 1181.202, as relied upon by DPW, defines investment income as "actual or imputed income available

---

1. Although several of the audit adjustments made were appealed by Mount Carmel, the only one at issue before us is AJ–8, disallowance of interest on capital indebtedness for investment income.

to or accrued by a facility from funds which the facility invests or lends or which are held by others for the benefit of the facility." Mount Carmel argues that because the DSRF"s principal and interest are not available to the facility, the income cannot fall within the definition of investment income. We think this interpretation ignores the remainder of the definition. As the record reflects, the monies at issue here were in fact held by a third party for the benefit of the facility. The interest income on the DSRF will be used at some future point to discharge the financial obligations of the facility. In the shorter run the funds may confer a benefit in the sense that they will cover the facility's liability in the event of default. In either situation, the DSRF and the income earned thereon will be used to satisfy Mount Carmel's financial obligations to its bondholders thereby conferring a substantial benefit on the facility.[2]

Coupled with the definition of investment income, DPW in its recommendation adopted by DPW's Secretary, found support for its treatment of the income earned on the DSRF through the regulation found at 55 Pa.Code § 1181.273(a). The second issue for our consideration is whether Section 1181.273(a) provides for an offset given the facts before us. This regulation provides:

> (a) Any form of investment income from the use of unrestricted funds will be used to reduce the allowable interest on capital indebtedness first, then other interest. Any form of investment income from the use of restricted funds found to be used for purposes other than their designated purpose, will be used to reduce the allowable interest on capital indebtedness first, then other interest. If restricted and unrestricted funds are commingled, all income to the common fund will reduce capital indebtedness first, then other interest.

2. *See e.g., Cheshire Hospital v. New Hampshire–Vermont Hospitalization Service, Inc.,* 689 F.2d 1112 (1st Cir.1982) which this Court finds persuasive.

Mount Carmel contends that the DSRF and its earned interest constitute a restricted fund that was used at all times for its designated purpose. Therefore, they argue, the offset under this provision was improper. In reading the regulation, we can make the logical deduction that Mount Carmel makes, namely that if a restricted fund is used properly, it will not be offset with capital indebtedness. The terms "restricted funds" and "unrestricted funds" are not defined in the regulations. Mount Carmel undeniably has no access to or control over the fund or the proceeds from the trustee's investment and the DSRF and its interest revenue are indeed restricted with respect to Mount Carmel. Furthermore, the DSRF was never used for other than its designated purpose of protecting the bondholders from default. Hence, an offset under this narrow set of facts pursuant to Section 1181.273(a) is arguably improper.

■ While DPW originally based the offset on Section 1181.273(a), it argues before this Court that the offset is justified by a different section of the regulation, 55 Pa.Code § 1181.260(m). This section provides:

§ 1180.260. Interest Expense

(m) Income earned from funds included in a trust agreement, including those funds deemed to be funded depreciation, shall be offset against allowable interest on capital indebtedness.

Although DPW did not base its decision on this section of the regulations, we can affirm a correct decision of a tribunal below even if the reasoning of that body was erroneous. *Friedlander v. Zoning Hearing Board of Sayre Borough*, 119 Pa.Commonwealth Ct. 164, 169, 546 A.2d 755, 758 (1988). We must take judicial notice of the code [3] and, in doing so, we find Section 1181.260(m) applicable. Moreover, Mount Carmel had at least two opportunities to refute the applicability of Section 1181.260(m), once in their reply brief and another time at oral arguments

3. 45 Pa.C.S. § 506.

before our Court. At neither time did they even attempt to discuss this section or make argument as to why this section should not apply.

Neither party disputes the fact that the DSRF is included in the trust agreement and that the DSRF earned income. Section 1181.260(m) mandates through clear language that the income earned from funds in a trust agreement *shall* be offset against interest on capital indebtedness. In applying this section of the regulations, the entire argument concerning whether the income earned on the DSRF is investment income pursuant to Section 1181.202 is irrelevant; Section 1181.260(m) refers to income not investment income.

The final issue raised by Mount Carmel is whether the DPW's treatment of the DSRF interest coupled with a $22,000.00 per bed cap provided for in 55 Pa.Code § 1181.-260(k) constitutes an inappropriate double penalty on the facility. Our review of the record indicates that this argument is made for the first time on appeal to our Court. Because this question was not raised before the government unit, we shall not consider it. Pa.R.A.P. 1551(a).

Accordingly, we hold that the offset of interest income earned on the DSRF with interest on capital indebtedness is proper pursuant to 55 Pa.Code § 1181.260(m). DPW neither abused its discretion or committed an error of law in applying this specific regulation.

## ORDER

NOW, January 11, 1991, the order of the Secretary of the Department of Public Welfare, dated May 4, 1988, at File No. 23–85–236, is affirmed.