# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J. McGraw, LLC               :
:
           v.              :  No. 1382 C.D. 2018
:  Argued:  May 6, 2019
:
Warren County Board of       :
Assessment Appeals, Conewango  :
Township, County of Warren, and  :
Warren County School District   :
:
Appeal of: Warren County     :
Board of Assessment Appeals   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED:  May 29, 2019

Warren County Board of Assessment Appeals (Board)[1] appeals the orders of the Court of Common Pleas of the 37th Judicial District, Warren County Branch (trial court) denying the Board's Motion to Enforce Settlement Agreement (Motion) and dismissing J. McGraw, LLC's (Landowner) property tax assessment appeal with prejudice. For the reasons that follow, we affirm.

---

[1] By April 1, 2019 order, Conewango Township (Township), Warren County (County), and Warren County School District (School District) (collectively, Taxing Authorities) were precluded from filing briefs based on their failure to timely file briefs as directed by this Court.

Landowner owns real property located at 3291 Market Street, Conewango Township, Warren County,[2] on which a Hampton Inn and Suites hotel was constructed and is operated. On December 1, 2010, Landowner appealed the Board's assessed valuation of the property at $707,940.00 for the 2011 tax year to the trial court.[3] Reproduced Record (R.R.) at 6a-9a. On January 18, 2011, the

---

[2] Conewango Township is a Second Class Township situate in Warren County, which is a Sixth Class County. *See* 123 The Pennsylvania Manual 6-43, 6-131 (2017). *See also Emert v. Larami Corporation*, 200 A.2d 901, 902 n.1 (Pa. 1964) ("Courts will take judicial notice of geographical facts such as the county in which a town or city is located.") (citations omitted). The Township, County, and School District are authorized to impose taxes on Landowner's real property. *See* Section 201(a) of The General County Assessment Law (General Assessment Law), Act of May 22, 1933, P.L. 853, *as amended*, added by the Act of December 28, 1955, P.L. 917, 72 P.S. §5020-201(a) ("The following subjects and property shall, as hereinafter provided, be valued and assessed, and subject to taxation for all . . . township, [and] school . . . purposes at the annual rate: (a) All real estate, to wit: . . . buildings, lands, lots of ground . . . and parking lots . . . and all other real estate not exempt by law from taxation."); Section 8811(a)(1)(iii) and (iv) of the Consolidated County Assessment Law (Consolidated Assessment Law), 53 Pa. C.S. §8811(a)(1)(iii), (iv) ("[A]ll subjects of property made taxable by the laws of this Commonwealth for county, . . . township and school district purposes shall . . . be valued and assessed at the annual rates, including all: (1) Real estate, namely: . . . (iii) buildings permanently attached to land or connected with water, gas, electric or sewage facilities; [and] (iv) lands, lots of ground . . . and parking lots[.]").

[3] Section 8851 of the Consolidated Assessment Law states, in relevant part:

**(a) Establishment and membership.—**

(1) [C]ounties of the fourth through eighth classes may, establish a board to be known as the board of assessment appeals[.]

* * *

**(b) Powers and duties of board.—**The board has the following powers and duties:

(1) Appoint, with the approval of the county commissioners, clerks, engineers and other employees as necessary.

**(Footnote continued on next page…)**

2

Board filed an answer to Landowner's appeal, denying Landowner's allegation "that the assessment is unfair, unreasonable and excessive." Certified Record (C.R.) Docket Item No. 11 ¶9; R.R. at 8a.

On June 14, 2016, the trial court issued a Notice of Intent to Terminate Case and Remove it From the Civil Docket because the Prothonotary's Office identified the case "as having no activity for a period of at least twenty-four (24) consecutive months as of June 15, 2016." C.R. Docket Item No. 12. The trial court notified the parties that "unless [they] file a written objection to termination

**(continued…)**

(2) Promulgate regulations as provided in section 8852 (relating to regulations of board).

(3) Hear and determine appeals, as provided in section 8844 (relating to notices, appeals and certification of values).

(4) Establish the form of the assessment roll as provided in section 8841 (relating to assessment roll and interim revisions).

(5) Prepare annually and submit to the county commissioners an estimate of the expense to be incurred incidental to the carrying out of the provisions of this chapter.

(6) Establish a permanent system of records as required by section 8834 (relating to assessment records system).

53 Pa. C.S. §8851(a)(1), (b). *See also* Section 8802 of the Consolidated Assessment Law, 53 Pa. C.S. §8802 (defining "Assessed value" as "[t]he assessment placed on real property by a county assessment office upon which all real estate taxes shall be calculated."); Section 8831(a) of the Consolidated Assessment Law, 53 Pa. C.S. §8831(a) ("In each county, a chief assessor shall be appointed."); Section 8831(c)(3) and (4) of the Consolidated Assessment Law, 53 Pa. C.S. §8841(c)(3), (4) ("It shall be the duty of the chief assessor to: . . . Prepare and maintain a permanent records system and other maps, plans, surveys and records as may be deemed necessary to secure a proper and equitable assessment[; and] Prepare an assessment roll in accordance with this chapter.").

3

or a statement of intent to proceed . . . on or before August 5, 2016, the Court will issue an order terminating the case and directing the Prothonotary to mark the case as terminated from the docket." *Id.* The Board and the School District filed timely notices of their intent to proceed in the matter. *See* C.R. Docket Item Nos. 13, 14.

As a result, a number of status conferences were scheduled and continued as the parties sought to settle the case. *See* C.R. Docket Item Nos. 16, 18, 19, 20, 23, 24. Ultimately, the parties appeared before the trial court on September 21, 2017, for a hearing on Landowner's appeal of the Board's assessed valuation of its property for the 2011 tax year and the subsequent tax years.[4] At the hearing, counsel for the Board and the Taxing Authorities (Counsel) with respect to the taxes owed, *see* R.R. at 12a, told the trial court that the parties had come to an agreement to settle the taxes that Landowner owed for the seven tax years at issue. *Id.* at 13a. Counsel asserted that the past due taxes for that period totaled $175,000.00, and that the assessed valuation of the property is $707,940.00. *Id.*[5]

---

[4] *See* Section 518.1(b) of the General Assessment Law, 72 P.S. §5020-518.1(b) ("If a taxpayer has filed an appeal from an assessment, so long as the appeal is pending before . . . a court on appeal from the determination of the board, . . . the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any assessment subsequent to the filing of such appeal . . . prior to the determination of the appeal by . . . the court.").

[5] Specifically, Counsel stated, in relevant part:

> So we were prepared today to discuss those issues of [market valuation] for every year and I think – and we're going to work out the details as far as what the agreed upon assessed value for those years is, but the way we structured the settlement at least is that [it is] just [based on] the total amount of past due taxes. So how we get there as far as the assessed value for the various year[s] I think is a little arbitrary because it really comes down to: What is going to be owed, and then what's the value going forward[.]

**(Footnote continued on next page…)**

4

However, Counsel advised the court that "before any formal settlement or before the case is dismissed, it would need to be voted on at a public meeting for all three [of the Taxing Authorities]." R.R. at 16a. He stated that he did not yet have the approval of all three of the County's commissioners, and counsel for the commissioners stated that he had "standing authority from two of the commissioners to preliminarily accept whatever offer [Counsel] feels is appropriate," and "Obviously the formal adoption would have to be voted on at a public meeting." *Id.* Counsel also informed the trial court that "the school district's next meeting is not until October, so it would have to get on their agenda for them to vote on it and it would not be actually approved until then." *Id.* at 17a. Further, Counsel told the court that the Township "ha[s] a meeting on Monday," that he did not "know if that has to be on the agenda for them to vote on it or not, but at the very least what we'll do is have a real good idea as to whether they will approve that at the next board meeting." *Id.* at 18a. Counsel stated, "So I think it's going to take another month to get formal approval from everybody." *Id.*

Prior to adjourning the hearing, the trial court advised the parties, "I'll list that you'll have 30 days to secure approval from all of the parties and then what I need is an order presented to the effect – the terms of the settlement which you'll prepare and submit jointly." R.R. at 18a. Accordingly, the trial court issued an order continuing the matter for 30 days, which stated, in pertinent part:

> The tentative agreement reportedly reached involves the payment by [Landowner] of the sum of $175,000 in past due taxes. The parties will also agree to

---

**(continued…)**

R.R. at 14a.

5

the assessment of a property tax liability of $707,940 for the subject property. The Court was informed by counsel that the final approval of this settlement by the relevant taxing authorities had not yet been procured, but all of the taxing authorities will have met and had an opportunity to approve or disapprove the settlement agreement by no later than October 11, 2017.

*Id.* at 21a.

By October 26, 2017 order, the trial court granted the Board's motion to extend the stay for an additional 30 days stating, "Within 30 days of this Order, the [Taxing Authorities] shall advise this Court whether the parties have approved settlement." C.R. Docket Item No. 27. By November 29, 2017 order, the trial court granted a joint motion to extend the stay again stating, "Within 30 days of the date of this Order, the [Taxing Authorities] shall advise this Court whether the parties have approved the settlement." C.R. Docket Item No. 29. A requested status conference scheduled for July 9, 2018, was continued to August 2, 2018, after Landowner's former counsel withdrew his appearance and new counsel entered his appearance. C.R. Docket Item Nos. 30-36.

Ultimately, on August 9, 2018, the Board filed the instant Motion to enforce the oral settlement agreement tentatively reached at the September 18, 2017 trial court hearing. Specifically, the Board explained that "the parties agreed to settle the instant case as follows: starting in 2018, the Property would be assessed at $1,312,500 and [Landowner] would owe past due taxes of $175,000. These past due taxes could be paid over ten years." R.R. at 30a. The Board acknowledged, "[B]ecause the taxing authorities are public bodies, the settlement would have to be approved at a public meeting, notwithstanding the settlement's informal approval," and that "[f]or this reason, the parties needed a formal, written settlement agreement that could be approved at a public meeting." *Id.*

6

The Board conceded that, during September and October 2017, the parties continued to negotiate the terms of the settlement via email, "[t]he principal issues involv[ing] a clause that [Landowner] would refrain [from] further tax appeals for five years and the [Taxing Authorities'] right to a lien securing payment of $175,000." R.R. at 31a. The Board asserted that, "[u]ltimately, the [Taxing Authorities] relented on the 'no-appeal' clause and [Landowner's] counsel acknowledged the [Taxing Authorities'] right to a lien for past due taxes." *Id.*

The Board alleged that, as a result, on November 2, 2017, a draft settlement agreement was sent to Landowner for review and comment but, after receiving no response, the Board requested the status conference. R.R. at 31a. The Board claimed that following the entry of his appearance, Landowner's new counsel "proposed settlement terms materially different from the previously agreed-upon settlement" and that "it appears [Landowner] has no intention of abiding by the parties' original settlement proposal and wants to either litigate this matter or enter into settlement discussions anew." *Id.* at 32a. The Board asserted, "Despite the absence of a signed writing, . . . the parties have a valid, enforceable settlement agreement that should be enforced against [Landowner]." *Id.*

Based on the foregoing, the Board asked the trial court to issue an order enforcing the settlement agreement, which included the following relevant terms:

1. Since 2011, the Property's assessed value has been $707,940. The Parties have agreed that the total, aggregate assessed value of the Property is as follows:

| Tax year | Total Assessed Value |
|---|---|
| 2011 | $1,041,451 |
| 2012 | $1,032,759 |

7

| 2013 | $1,029,625 |
| 2014 | $1,025,538 |
| 2015 | $1,025,539 |
| 2016 | $1,017,669 |
| 2017 | $1,010,180 |
| 2018 | $1,312,500 |

2. For tax years after 2018, the Property's total, aggregate assessed value may be adjusted by the County, through the [County's Assessment Office], in the normal course of business and as provided by law. Unless and until the Assessment Office makes such adjustment, the Property's assessed value will remain $1,312,500.

\* \* \*

4. For tax years 2011 through 2017, [Landowner] paid the Property's real estate taxes based on its then-assessed value of $707,940. Because the Property's assessed value has been increased in accordance with Paragraph 1 of this Order, [Landowner] owes additional property taxes for tax years 2011 through 2017. The Parties agree that [Landowner's] additional property tax obligation for tax years 2011 through 2017 is $175,000 . . . which is due and payable subject to the terms of this Order.

5. [Landowner] can pay the Past Due Taxes in ten equal yearly installments of $17,500, with each yearly payment due on or before the date that yearly property taxes are otherwise due and payable in [the] County.

6. The Past Due Taxes shall remain a tax liability of the Property until paid in full.

7. Within 45 days of this Order, [the] Township, [the] County, and [the] School District must vote to approve this settlement.

R.R. at 35a-36a. The trial court scheduled a hearing for September 5, 2018, on the Board's Motion. C.R. Docket Entry No. 38. On August 29, 2018, Landowner

8

filed the instant Praecipe to Dismiss with Prejudice the appeal of the Board's assessment. R.R. at 57a-60a.[6]

At the September 5, 2018 hearing, the trial court considered both the Board's Motion and Landowner's request to discontinue the assessment appeal. See R.R. at 61a-76a. At the hearing, with respect to the praecipe to dismiss, Counsel stated that Landowner agreed not to withdraw the instant assessment appeal as an integral part of a 2015 settlement agreement regarding Landowner's tax liability on another property. *Id.* at 66a-67a. Counsel also argued that the Taxing Authorities would be prejudiced by dismissal because considerable sums had been expended in expert fees to try the case. *Id.* at 67a-68a.

With respect to the Motion, Counsel asserted, "On substance of the settlement agreement, I don't believe there is any disputed facts about the terms of that settlement agreement. If there are, I have not heard any." R.R. at 68a. He explained that the reason why the agreement was tentative at the prior court hearing "was because, you know, any written, any contract of a taxing body has to be approved at a public meeting." *Id.* at 69a. Counsel stated that "[t]hat was the only condition for that settlement," and that "each [Taxing Authority] at issue has approved this settlement agreement." *Id.* Counsel offered meeting minutes and affidavits to demonstrate that the governing bodies of the Taxing Authorities had each approved the written settlement agreements. *Id.* at 69a-70a. Counsel concluded, "So, we have now, your Honor, the only condition preventing a full

---

[6] *See* Rule C.P.L5003(e) of the Local Rules of the 37th Judicial District ("The party filing the appeal may discontinue the appeal prior to the time set for the first exchange of appraisals. Thereafter, the appeal may be discontinued only with the agreement of all parties, or by leave of court.").

9

final settlement agreement, which was agreement by the [Taxing Authorities] at a public meeting, we have that now." *Id.* at 70a.

Counsel explained that even though there is no executed written settlement agreement, "The case law is clear in that issue where there is a meeting of the minds, there is no disagreement on material terms, which there is not here, the Court can and there is a presumption in favor of enforcing settlement agreements." R.R. at 71a. Counsel claimed that the only two issues in the instant assessment appeal are the "[p]ast due taxes" and the property "[v]alue going forward" that "[t]here was a clear agreement on those two issues." *Id.*

Ultimately, at the conclusion of the hearing, the trial court rejected the Board's arguments with respect to the Motion and Landowner's request to withdraw the assessment appeal, and issued the instant orders denying the Board's Motion and dismissing Landowner's appeal, *id.* at 75a,[7] and the Board filed this appeal.[8]

---

[7] In relevant part, the Court stated the following at the hearing:

> It's clear . . . that the agreement was tentative as described on the record.
>
> The parties were granted 30 days for counsel to secure approval. That didn't happen within 30 days.
>
> Secondly, it's very clear to the Court that the Court continued the matter rather than settled and discontinued on that date, on that belief.
>
> So, that period of time the Court was of the belief that in the event this settlement did not reach finality, that the Court would be back to resolve the matter.

**(Footnote continued on next page…)**

On appeal, the Board first argues that the trial court erred in denying the Motion because the parties had a valid and binding settlement agreement that was ultimately approved by all of the Taxing Authorities. Specifically, the Board contends that all of the material terms of their oral settlement agreement were memorialized on the record at the September 21, 2017 trial court hearing.

In the Pa. R.A.P. 1925(a) opinion filed in support of its order denying the Motion, the trial court explained its rationale as follows:

> There is an obvious asymmetry in how the Taxing Authorities would have this Court treat the tentative settlement agreement as it relates to the different parties in this action. The Taxing Authorities took the position that they would need to hold a public vote on a written settlement agreement before it could be final, and if they had voted no on the written settlement agreement then it is illogical to expect that they would have nevertheless conceded that they were bound by the tentative, oral

---

**(continued…)**

> As it occurred, it didn't. For that reason, the motion to enforce settlement agreement is denied.
>
> Secondly, the matter of the motion or the praecipe to dismiss the appeal, that is granted with prejudice.

R.R. at 74a-75a.

[8] When reviewing a trial court order regarding the enforcement of a settlement agreement, "our scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court. However, we are only bound by the trial court's findings of fact which are supported by competent evidence." *Bennett v. Juzelenos*, 791 A.2d 403, 406 (Pa. Super. 2002) (citations omitted). Additionally, "[t]he prevailing party is entitled to have the evidence viewed in the light most favorable to its position. Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous." *Id.* (citation omitted).

11

agreement. Absent such an absurdity, the Taxing Authorities' position is that [Landowner] was unilaterally bound by an agreement that they were nonetheless free to either accept or reject. This goes against contract principles requiring acceptance of offers to form a contract. In a possible attempt to get around this asymmetry, the proposed Order attached to the Board's Motion to Enforce Settlement Agreement would have required the Taxing Authorities to approve of the settlement within 45 days. Taken literally, this would reduce their public votes to a sham.

Trial Court 11/30/18 Opinion at 22-23.

We discern no error in the trial court's ruling in this regard. Initially, we note that a settlement agreement encompasses the compromise of a pending legal claim. *Oakmont Presbyterian Home v. Department of Public Welfare*, 633 A.2d 1315, 1320 (Pa. Cmwlth. 1993).[9] "A settlement agreement, like a 'consent decree,' is 'in essence a contract binding the parties thereto.'" *Roe v. Pennsylvania Game Commission*, 147 A.3d 1244, 1250 (Pa. Cmwlth. 2016) (citation omitted). As a result, the enforceability of settlement agreements is determined according to principles of contract law. *Pennsbury Village Associates, LLC v. McIntyre*, 11 A.3d 906, 914 (Pa. 2011). Courts will enforce a settlement agreement if all of its material terms have been agreed upon by the parties. *Id.*

However, as the Pennsylvania Supreme Court has explained:

The law in this jurisdiction is clear and well settled that an attorney must have express authority in order to bind a client to a settlement agreement. *McLaughlin v. Monaghan*, [138 A. 79 (Pa. 1927)]; *Starling v. West Erie*

---

[9] *See Sofronski v. Civil Service Commission*, 695 A.2d 921, 926 (Pa. Cmwlth. 1997) ("As the Superior Court has stated: '[s]ettlement of matters in dispute are favored by the law and must, in the absence of fraud and mistake, be sustained. Otherwise, any settlement agreement will serve no useful purpose.' *Greentree Cinemas, Inc. v. Hakim*, [432 A.2d 1039, 1041 (Pa. Super. 1981)].").

> *Ave. Bldg. & Loan Ass'n*, [3 A.2d 387 (Pa. 1939)]; *Archbishop v. Karlak*, [299 A.2d 294 (Pa. 1973)]; *Rizzo v. Haines*, [555 A.2d 58, 66 (Pa. 1989)]. The rationale for this rule stems from the fact that parties settling legal disputes forfeit substantial legal rights, and such rights should only be forfeited knowingly. *See, e.g.*, *Starling*, 3 A.2d at 388 ("apparent or implied authority does not extend to unauthorized acts which will result in the surrender of any substantial right of the client, or the imposition of new liabilities or burdens upon him"). As such, a client's attorney may not settle a case without the client's grant of express authority, and such express authority can only exist where the principal specifically grants the agent the authority to perform a certain task on the principal's behalf. *See* [Restatement (Second) of Agency §7 cmt. c (Am. Law Inst. 1958)].

*Reutzel v. Douglas*, 870 A.2d 787, 789-90 (Pa. 2005).

As the Board concedes, in the absence of a vote by the Taxing Authorities adopting the settlement agreement, Counsel had no actual authority to bind any of them to the terms of the purported settlement agreement because the Board has no authority with respect to the imposition of the past due taxes or any interest in them. Without such assent, the settlement agreement was merely tentative because there was no mutuality of obligation under the agreement until it was approved by the Taxing Authorities. As a result, there was no valid and enforceable settlement agreement executed by Counsel and Landowner in the absence of such actual authority or approval of the agreement by the Taxing Authorities. *Reutzel. See also Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 512 (Pa. Super. 1992) ("A contract is evidenced by a mutuality of obligation. A mutuality of obligation exists when both parties to the contract are required to perform their respective promises. If a mutuality of promises is absent, the contract is unenforceable.").

13

Thus, assuming *arguendo* that all of the material terms of the tentative oral settlement agreement were adequately agreed upon by the parties, as the Board alleges,[10] the agreement was still unenforceable in the absence of the Taxing Authorities' express assent to its terms. In sum, the trial court did not err in denying the Board's Motion to enforce an unenforceable tentative settlement agreement and the Board's claim to the contrary is without merit.

Finally, the Board claims that the trial court erred in dismissing Landowner's assessment appeal with prejudice pursuant to Rule C.P.L5003(e). Specifically, the Board contends that it was prejudiced by the dismissal because it was lulled into believing that a settlement of the past due taxes was imminent due to the ongoing negotiations regarding a settlement agreement and based on the provisions of the settlement agreement executed in a separate assessment appeal.[11]

---

[10] Contrary to the Board's assertion, all of the specific material terms of agreement outlined above as contained in Exhibit F of the Motion, including the specific assessed valuation of the property for each relevant tax year and future tax years, were not placed on the record or agreed to by Landowner at the September 21, 2017 trial court hearing or at any other time. *See* R.R. at 12a-15a, 45a-55a.

[11] On appeal, the Board also asserts that it is prejudiced because it is precluded from pursuing the past-due taxes on the purportedly under-assessed property for all of the relevant tax years. However, as outlined above, the Board has no interest in the past-due taxes purportedly owed. Moreover, the Board did not argue before the trial court that it would be prejudiced by the dismissal on this basis as well, *see* R.R. at 65a-68a, and this new theory will not be addressed for the first time in this appeal. *See, e.g.*, *Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008) ("[F]or any claim that [is] required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court.") (citation omitted). This waiver applies equally to the potential rights of the Taxing Authorities. *See also Starwood Airport Realty v. School District of Philadelphia*, 115 A.3d 410, 415 (Pa. Cmwlth. 2015) ("In both [*In re Appeal of Gateway School District*, 556 A.2d 924 (Pa. Cmwlth. 1989) (*Gateway*),] and the present case, it was the taxpayer that initially appealed to the assessment appeal board. Moreover, in both cases it was the school district that appealed the assessment appeal board's decision following a decision by the board that was favorable to the taxpayer. In addition, in both cases it was the school district that sought to discontinue its appeal
**(Footnote continued on next page…)**

"[A] discontinuance that is prejudicial to the rights of others should not be permitted to stand even though originally entered with the expressed consent of the court. The action of a lower court in such connection is reviewable only for an abuse of discretion." *Brown v. T.W. Phillips Gas & Oil Co.*, 74 A.2d 105, 108 (Pa. 1950) (citation omitted). In this regard, "Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden." *Commonwealth v. Safka*, 141 A.3d 1239, 1248 (Pa. 2016) (quoting *Paden v. Baker Concrete Construction, Inc.*, 658 A.2d 341, 343 (Pa. 1995)). In this regard, "'it is not sufficient to persuade the appellate court that it might have reached a different conclusion . . . .'" *Id.* at 1248-49 (quoting *Paden*, 658 A.2d at 343). "Rather, one must go further and show an abuse of the discretionary power." *Id.* at 1249. "'An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice,

---

**(continued…)**

following subsequent tax assessments, and it was the taxpayer that sought to strike the discontinuance. Therefore, based on *Gateway*, [the landowner's] initial appeal to the Board [of Revision of Taxes] resulted in an automatic appeal to the trial court, under Section 518.1 of the [General Assessment] Law, for [the landowner's] 2013 and 2014 tax assessments. . . Because allowance of the School District's discontinuance, without [the landowner's] consent, would thwart the automatic appeal provision of Section 518.1 of the [Assessment] Law for [the landowner's] 2013 and 2014 tax assessments, we hold that the trial court erred in denying [the landowner's] Motion to Strike."); *Gateway*, 556 A.2d at 927 ("After examining local rule 502, we cannot conclude that the discontinuance provision, if properly applied to the facts in this case, is invalid or in conflict with the assessment acts. Local rule 502(H) recognizes that the interested parties in a tax assessment case may decide not to proceed with an appeal, but apparently in deference to the legislative directive to treat subsequent assessments as deemed appealed, requires the consent of all the parties in order to discontinue the appeal when more than thirty days have elapsed since conciliation.").

bias or ill will, as shown by the evidence or the record.'" *Id.* (quoting *Paden*, 658 A.2d at 343).

At the hearing on Landowner's praecipe, the Board stated that it would be prejudiced by the dismissal of Landowner's assessment appeal because "both sides have substantial money in the case" due to expert appraisal fees, and because Landowner's principal agreed not to withdraw the instant assessment appeal in a settlement agreement disposing of another assessment appeal at a different docket number for a different property. R.R. at 65a-68a.

However, in rejecting these claims, the trial court explained in its Pa. R.A.P. 1925(a) opinion that, with respect to the purported prejudice to the Board, "[b]oth the [Taxing Authorities] and [Landowner] had expended sums litigating the assessment appeal, although approximately five years passed with no action by any party that was reflected in the official Court record." Trial Court 11/30/18 Opinion at 23. Indeed, as outlined above, on June 14, 2016, the trial court issued a Notice of Intent to Terminate Case and Remove it From the Civil Docket because the Prothonotary's Office had identified the case "as having no activity for a period of at least twenty-four (24) consecutive months" as neither Landowner nor the Board had pursued the matter since January 18, 2011, a period of over five years. *See* C.R. Docket Entry No. 12.

Finally, with respect to the settlement agreement in the separate assessment appeal for the other property, the trial court reasoned, "Aside from the obvious difference between the parties involved, the Taxing Authorities are still free to seek whatever remedies may be appropriate for the breach of the settlement agreement at the other term and number." Trial Court 11/30/18 Opinion at 23-24. As the trial court explained, the Board is free to pursue any and all available

16

remedies flowing from the purported breach of the settlement agreement executed in that separate and unrelated assessment appeal to the extent that it has any enforceable interest in that agreement. Based on the foregoing, we do not conclude that in granting dismissal, "the law [wa]s overridden or misapplied, or the judgment exercised [by the trial court wa]s manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record." *Safka*, 141 A.3d at 1249.

Accordingly, the trial court's orders are affirmed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| J. McGraw, LLC | : | |
| | : | |
| v. | : | No. 1382 C.D. 2018 |
| | : | |
| | : | |
| Warren County Board of | : | |
| Assessment Appeals, Conewango | : | |
| Township, County of Warren, and | : | |
| Warren County School District | : | |
| | : | |
| Appeal of: Warren County | : | |
| Board of Assessment Appeals | : | |

# **O R D E R**

AND NOW, this 29th day of May, 2019, the orders of the Court of Common Pleas of the 37th Judicial District, Warren County Branch, dated September 5, 2018, are AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge